RODALE PRESS, INC., et al., Petitioners,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 21259.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 13, 1968.

. Decided Oct. 18, 1968.

ican Civil Liberties Union as amicus curiae.

Before MCGOWAN, TAMM and ROBINSON, Circuit Judges.

TAMM, Circuit Judge:

This case arises on a petition to review and set aside an order of the Federal Trade Commission requiring petitioners to cease and desist from making certain representations in advertisements promoting the sale of some of their publications. Petitioners, Rodale Press, Inc. and Rodale Books, Inc., are publishers of a variety of books and pamphlets authored and edited by the individual petitioners, Jerome I. Rodale and Robert Rodale,[1] on the corporations' staffs. In 1954 petitioners published a hard-backed book, "The Health Finder" and a soft-backed pamphlet containing two articles, "How to Eat for a Healthy Heart" and "This Pace is *Not* Killing Us," by J. I. Rodale. Advertising relating to these two publications is the subject of the Commission's order.

As regards "The Health Finder," the challenged advertising consists of two brochures used to promote its sale. The first was used from 1956 until 1960 and the second, from 1960 until 1963. After the second "Health Finder" ceased to be distributed in April 1963, the only continued promotion of either work was a listing of the titles in petitioners' catalogues and an occasional reference to them in "Prevention" magazine, another of petitioners' publications. In addition, the Commission challenged various mailing pieces advertising "How to Eat for a Healthy Heart" and "This Pace is *Not* Killing Us," used from 1956 through 1960.

Petitioners' advertising was initially investigated in October 1959, in response to a complaint made to the Commission, but no action was taken. The investigation was renewed in October of 1962 and led to the issuance of a complaint on April 3, 1964, alleging that false representations contained in advertisements

Mr. Thurman W. Arnold, Washington, D. C., with whom Mr. Stuart J. Land, Washington, D. C., was on the brief, for petitioners.

Mr. Richard C. Foster, Atty., Federal Trade Commission, with whom Messrs. James McI. Henderson, General Counsel, and Daniel H. Hanscom, Atty., Federal Trade Commission, were on the brief, for respondent.

Messrs. Wm. Warfield Ross and Lawrence Speiser, Washington, D. C., filed a brief on behalf of the American Civil Liberties Union, as amicus curiae. Mr. Joel E. Hoffman, Washington, D. C., also entered an appearance for the Amer-

1. They are also petitioners as officers of the corporations.

for the described publications constituted "unfair and deceptive acts and practices and unfair methods of competition * * *" in violation of 15 U.S.C. § 45(a) (1) (1964) (*see* text thereof as set out in appendix).

The complaint contains allegations of nineteen misrepresentations in petitioners' advertising:

That readers of "The Health Finder" who follow the ideas therein will:

1. Add years to their lives
2. Gain more energy
3. Effectuate savings on medical and dental expenditures
4. Feel better than ever before
5. Gain and maintain health
6. That readers of "the Health Finder" *will find therein the answer to any health problem* (emphasis added) including but not limited to:
7. How to free oneself of common colds
8. How to prevent and cure all types of constipation
9. How to prevent ulcers
10. How to prevent fatigue
11. How to prevent goiter
12. How to prevent high blood pressure

That the ideas and suggestions contained in "The Health Finder" are effective in prevention, treatment and relief of:

13. Cancer
14. Tuberculosis
15. Infantile paralysis
16. Heart disease
17. Arthritis
18. Mental illness
19. That the ideas and suggestions in "How to Eat for a Healthy Heart" and "This Pace is *Not* Killing Us" will be beneficial in the prevention, treatment and cure of heart disease.

A hearing was held before a hearing examiner and he sustained the allegations in the complaint as to ten of the representations: Nos. 7–12, 13, 15, 16 and 19. He found that the alleged representations had not been made and dismissed the complaint as to the remaining nine: Nos. 1–6, 14, 17 and 18.

Petitioners appealed to the Commission, which, after briefing and oral argument, issued a decision vacating the trial examiner's decision. The Commission (Commissioner Elman, dissenting) issued its own findings of fact, concluding that each of the nineteen alleged representations had been made by petitioners in their advertising and that those representations were false. Accordingly the advertising was adjudged to be in violation of 15 U.S.C. § 45(a) (1) (1964) and petitioners were ordered to cease and desist from making the condemned representations. Petitioners sought review of the order in this court under 15 U.S.C. § 45(c) and (d) (1964) (*see* text thereof as set out in appendix).

I

A crucial point in the case against petitioners lies in the Commission's conclusions that the nineteen representations set out in the complaint *were made as alleged.* The only evidence of record on the point is the advertising itself, which petitioners concededly used in selling their publications. By consent of the parties no testimonial evidence was taken. Accordingly, I examine the representations alleged and the evidence cited by the Commission in support of its conclusions.

THE RHETORICAL QUESTIONS

Petitioners' advertising circulars for "The Health Finder" contained five rhetorical questions:[2] "Which of the health ideas in this amazing book will * * * (1) add years to your life? (2) Give you more energy? (3) Cut down on your doctor and dentist bills? (4) Make you feel better than you ever

2. The rhetorical questions were contained only in the advertising circulars distributed from 1956 until 1960.

felt before? (5) Help your family to achieve health and happiness?" The circulars also contained testimonials of various satisfied readers that because they read the book their "health improved;" that they were "sure [the book has] prolonged the lives of a vast number of people;" that they "felt like moving mountains." The questions and the testimonials, coupled with general claims in the advertising that readers would gain "radiant health and abundant energy," are relied upon by the Commission to support its finding that the advertising assures readers that reading the book will result in an affirmative answer to each of the questions, *id est*, that they will be guaranteed an increased life span, more energy, etc.

While I feel that the law of deceptive advertising practices must protect not only the shrewd, but the gullible as well, Aronberg v. FTC, 132 F.2d 165, 167 (7th Cir. 1942), I fail to see how even those easily duped would have interpreted the quoted material as an *assurance* of longer life, more energy, etc. Directly below the questions in the circulars is this statement:

> This knowledge can help the average person remain *comparatively free of many terrible diseases. * * * Mr.* Rodale believes that by observing certain health rules, we can develop bodies, minds, nerves, muscles and tissues that are more resistant to disease than they otherwise would be. (Emphasis in original.)

I agree with the trial examiner who noted in dismissing the portion of the complaint based on these allegations (J.A. 116): the most that can be claimed to have been represented by the challenged statements, in the context of their use, is that the reader will find ideas in the book which, if followed, will be of value to the average person in maintaining his health and avoiding disease, and in this way help him to live longer, feel better, etc.

I would set aside the Commission's order insofar as it applies to representations 1 through 5.

### THE GENERAL REPRESENTATION

The complaint included an allegation of a general representation that "The Health Finder" would answer "any health problem" (allegation No. 6). The Commission's conclusion that a general representation was made is based on statements in the ads such as "ANSWERS HEALTH PROBLEMS," "TELLS YOU HOW TO STAY HEALTHY," and a characterization of the book as an "encyclopedia." In view of the absence of absolute terms like "all" or "any" and the presence of the qualifying language quoted above, I think it unfair and unreasonable to interpret the advertisements as representing that the book contained a panacea. I would set aside the Commission's order insofar as it relates to this alleged representation.

### THE SPECIFIC DISEASES

Without going into the portions of advertisements relied upon by the Commission in finding that representations of prevention, treatment and relief were made with respect to specific diseases, which I enumerated 7–19, I conclude that the findings are supported by substantial evidence. The advertising involved is frequently more specific than in the general representations; and unlike the general representations, there is no qualifying language. I think these findings are the kind which could reasonably have gone either way and I am of course bound, under those circumstances, by the agency's determination. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Lorain Journal Co. v. FCC, 122 U.S.App.D.C. 127, 131, 351 F.2d 824, 828 (1965), cert. denied WWIZ, Inc. v FCC, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966).

### II

The theory under which the complaint was issued and under which the hearing before the examiner was held differed from the theory upon which the complaint was ultimately sustained by the Commission. The complaint was based upon

the *Witkower* theory, sustained by the Commission in Witkower Press, Inc., 57 F.T.C. 145 (1960). The essence of the complaint is that the advertising represented, *as did the publication,* that the suggestions in the books were preventatives and/or curealls for the various ailments. Thus at the examiner's hearing petitioners and counsel for the Commission elicited testimony from numerous medical experts directed to an evaluation, *id est,* to establish the truth or falsity, of the claims regarding the remedies proposed in the books. The hearing also encompassed a factual issue as to what representations the advertisements actually made. The examiner found that the representations did present the books as containing preventatives, treatments and cures, and that the books purported to treat, cure and prevent as well. The briefs and oral argument before the Commission were based on the same theory: that the advertisements *accurately* represented the purport of the books which guaranteed prevention, treatment and cure if the suggested regimens were followed.

The Commission's decision, however, was based on a contrary theory: that the advertising inaccurately represented the books as containing guaranteed cures, when in fact the books included qualifying statements so that no such guarantees were made. The advertising thus represented the books as containing something which they did not contain.

Paragraph seven of the complaint alleges that contrary to representations made in the advertising, the "ideas and suggestions in 'The Health Finder' *will not assure* readers * * * an increased life span [etc.];" that " 'The Health Finder' does not contain the answer to all health problems and *will not enable* the reader to * * * free himself of common colds [etc.];" that "the ideas and suggestions contained in 'The Health Finder' are *not effective* prevention, relief or treatment of cancer [etc.]. * * * "

That the case was consistently prosecuted on the theory that the books' ideas and suggestions, repeated in the advertising, contained false promises of benefits is clear. In response to a question, Commission counsel Mr. Ferguson stated: "I presented the case, Commissioner Jones, on the theory that the advertising was false because the people who followed the suggestions and ideas contained therein would not achieve the therapeutic benefits described * * * " (Appendix to Commissioner Elman's dissent at 2, J.A. 973).

The subsequent change in theory at the Commission level is well described by Commissioner Elman in his dissent from the Commission's decision:

> Until today, there was no charge in this case that respondents' advertising misrepresented the content of the book, or misled the public as to what the book was about. The only charge was, as ·in *Witkower,* that the readers would be misled by the ads as to the health benefits they would receive by following the "false and misleading" ideas and suggestions contained in the book.

> Now all this is turned upside down. According to the majority opinion, respondents' advertisements were deceptive because they made claims which did *not* repeat but exceeded those to be found in the book.[3]

█ The Administrative Procedure Act, in 5 U.S.C. § ·554(b) (1964) provides in pertinent part: "Persons entitled to notice of an agency hearing shall be timely informed of * * * (3) the *matters of fact and law asserted."* (Emphasis supplied.) Hence it is well settled that an agency may not change theories in midstream without giving respondents reasonable notice of the change. NLRB v. Johnson, 322 F.2d 216, 219–220 (6th Cir. 1963); NLRB v. H. E. Fletcher Co., 298 F.2d 594 (1st Cir. 1962).

---

3. Commissioner Elman's dissent at 8, J.A. 970.

By substituting an issue as to the books' *content* for the one framed by the pleadings, effectiveness of the books' ideas and suggestions, the Commission has deprived petitioners of both notice and hearing on the substituted issue. The evil at which the statute strikes is not remedied by observing that the outcome would perhaps or even likely have been the same. It is the *opportunity* to present argument under the new theory of violation, which must be supplied.

## III

We observe in passing that a substantial part of the evidence of the representations made by petitioners consists of advertisements discontinued in April 1960, while the complaint was not issued until approximately four years later, in April 1964. While there is some authority for a deceptive practices proceeding based on discontinued advertising,[4] there is obviously an outer limit to the Commission's discretion. At some point, the balance between the public interest and fundamental fairness to respondents must be weighed, but in view of what we have said we need not decide the question here; rather, we merely note our concern.

The Commission's order is vacated and the case is remanded for further hearing and argument on the new theory of violation, which the Commission found to exist after oral argument.

## Appendix

15 U.S.C. § 45(a) (1) (1964) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.

15 U.S.C. § 45(c) (1964) Any person, partnership, or corporation required by an order of the Commission to cease and desist from using any method of competition or act or practice may obtain a review of such order in the court of appeals of the United States, within any circuit where the method of competition or the act or the practice in question was used or where such person, partnership, or corporation resides or carries on business, by filing in the court, within sixty days from the date of the service of such order, a written petition praying that the order of the Commission be set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission, and thereupon the Commission shall file in the court the record in the proceeding, as provided in section 2112 of Title 28. Upon such filing of the petition the court shall have jurisdiction of the proceeding and of the question determined therein concurrently with the Commission until the filing of the record and shall have power to make and enter a decree affirming, modifying, or setting aside the order of the Commission, and enforcing the same to the extent that such order is affirmed and to issue such writs as are ancillary to its jurisdiction or are necessary in its judgment to prevent injury to the public or to competitors pendente lite. The findings of the Commission as to the facts, if supported by evidence, shall be conclusive. To the extent that the order of the Commission is affirmed, the court shall thereupon issue its own order commanding obedience to the terms of such order of the Commission. If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts, or make new findings, by reason of the additional evidence so taken, and it shall file such modified or new findings, which, if supported by evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of its original order,

---

4. *See e. g.* Feil v. FTC, 285 F.2d 879, 886, n. 15 (9th Cir. 1960).

with the return of such additional evidence. The judgment and decree of the court shall be final, except that the same shall be subject to review by the Supreme Court upon certiorari, as provided in section 347 of Title 28.

15 U.S.C. § 45(d) (1964) Upon the filing of the record with it the jurisdiction of the court of appeals of the United States to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive.

McGOWAN, Circuit Judge (concurring in part):

 I join in Judge TAMM'S opinion except as to Part I. The essential defect in this proceeding as it reaches us is that the Commission has, for seemingly obvious reasons and after two full years of rumination, decided the case on a basis different from that on which it was brought, tried, and decided by the Trial Examiner. *See* 81 HARV.L.REV. 1352–1356 (1968). This denied respondents an opportunity to defend, either by evidence or argument, against a charge palpably different from the one brought against them. In this posture it seems inappropriate to me for this court to weigh the merits of the Commission's findings on the various violations charged. The proper relief for us to give is, in my view, to vacate the Commission's order and to remand to the Commission. The Commission would then presumably have the alternatives of either (1) appraising the Trial Examiner's findings in the context of the record made with reference to the charge that respondents' advertising is false because the material in the books it promotes is false, or (2) convening new evidentiary hearings on the question of whether the advertising is false because it does not reflect accurately what is in the books. The apparent staleness of this whole matter raises, as Judge TAMM foreshadows in Part III, a substantial question as to whether either alternative is wholly the part of wisdom.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge (concurring in part):

 I concur in Parts II and III of Judge TAMM'S opinion, and in Judge McGOWAN'S opinion *in toto*, but with an acknowledgment of an important question in this case which our disposition leaves unresolved. The Commission's complaint challenged advertisements of a book on grounds, *inter alia*, that they repeated "false, misleading and deceptive" ideas in the book Commissioner Elman's penetrating dissent[1] argues that a cease and desist order predicated upon such a theory impinges on rights of free speech. Our function, however, stops short of constitutional determinations not imperatively required,[2] and our remand for the Commission's consideration of other potentially dispositive issues removes this serious First Amendment problem from the proper scope of this review.

---

1. 3 Trade Reg.Rep. ¶ 17,996, at 20,389 (FTC 1967).

2. *E. g.*, Rosenberg v. Fleuti, 374 U.S. 449, 451, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963).