**C & C MARKET, INC., Moses, Lee, Joseph Murphy, and Samuel Petty, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 79–9C (A).**

United States District Court, E. D. Missouri, E. D.

June 7, 1979.

---

Harris, Kirksey & Thomas, Allen I. Harris, St. Louis, Mo., for plaintiffs.

Joseph B. Moore, Wesley D. Wedemeyer, Asst. U.S. Attys., St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

HARPER, District Judge.

Plaintiffs seek review of an administrative determination made by the Food and Nutrition Service of the United States Department of Agriculture denying plaintiff Corporation's application for authorization to participate in the Food Stamp Program, and withdrawing plaintiff Corporation's prior authorization.

The parties filed a joint stipulation of uncontested facts, and in addition testimony was heard. There is no dispute between the parties as to the essential facts of the case.

Plaintiff, C & C Market, Inc., is a Missouri corporation doing business as a grocery store at 4256 College in the City of St. Louis, Missouri. At the time this lawsuit was filed the other plaintiffs were: Moses Lee, president of C & C Market, Inc.; Lorenzo Murphy, vice-president; Joseph Murphy, secretary; and Samuel Petty, treasurer.

Subsequent to the filing of the joint stipulation of uncontested facts, Lorenzo Murphy tendered his resignation as vice-president and a member of the Board of Directors of C & C Market, Inc. Joseph Murphy was elected to replace Lorenzo Murphy as vice-president of C & C Market, Inc. On February 14, 1979, plaintiffs filed a motion to dismiss Lorenzo Murphy as a party to the above action. On March 7, 1979, the motion was sustained and said Lorenzo Murphy was stricken as a party plaintiff.

The defendant, United States of America, through the Food and Nutrition Service, Department of Agriculture (hereinafter referred to as FNS), administers the Food Stamp Program established by the Food Stamp Act, 7 U.S.C. § 2011, et seq. The Department approves application by retail food stores to accept and redeem coupons under the Program, 7 U.S.C. § 2017.

7 U.S.C. § 2017 provides, in pertinent part, as follows:

"(a) Regulations issued pursuant to this chapter shall provide for the submission of applications for approval by retail food stores and wholesale food concerns which desire to be authorized to accept and redeem coupons under the food stamp program and for the approval of those applicants whose participation will effectuate the purposes of the food stamp program. In determining the qualifications of applicants there shall be considered among other factors as may be appropriate, the following: (1) the nature and extent of the retail or wholesale food business conducted by the applicant; (2) the volume of coupon business which may reasonably be expected to be conducted by the applicant retail food store or wholesale food concern; and (3) the business integrity and reputation of the applicant. * * *

"(b) Regulations issued pursuant to this chapter shall require an applicant retail food store or whole sale food concern to submit information which will permit a determination to be made as to whether such applicant qualifies, or continues to qualify, for approval under the provisions of this chapter or the regulations issued pursuant to this chapter. * *

"(c) Any retail food store or wholesale food concern which has failed upon application to receive approval to participate in the food stamp program may obtain a hearing on such refusal as provided in section 2022 of this title."

During the times pertinent to this action the appropriate regulations regarding the approval of retail food stores to participate in the Food Stamp Program were found at 7 CFR, Part 272. Section 272.1 provides, in part, as follows:

"§ 272.1 *Approval of retail food stores, wholesale food concerns, and meal services.*

"(a) Firms desiring to participate in the program shall file an application with FNS, in such form as FNS may prescribe.

"(b) An applicant shall provide sufficient data on the nature and scope of the firm's business for FNS to determine whether such applicant's participation will effectuate the purposes of the program. In making such determination FNS shall consider:

"(1) The nature and the extent of the food business conducted by the applicant;

"(2) The volume of food stamp business which may be reasonably expected to be done by the applicant;

"(3) The business integrity and reputation of the applicant; and

"(4) Such other factors as FNS considers pertinent to the application under consideration.

"(h) FNS will periodically review the nature and scope of participating firms' business. If FNS receives new or additional information about a firm involving any of the criteria set forth in paragraphs (b), (c), and (d) of this section, FNS shall make a determination as to whether the firm's continued participation serves to further the purposes of the program. FNS shall withdraw approval to participate if a determination is made that the firm does not qualify for continued participation. Any withdrawal of authorization shall be subject to administrative review under the provisions of § 272.8.

"(i) FNS may, from time to time, but not more than once each Federal fiscal year, require a firm to update any or all of the information on the original application form. Failure to provide such information may result in the withdrawal of a firm's approval to participate in the program."

A retailer aggrieved by administrative action under the provisions of 7 CFR 272.1 may have the determination reviewed by the Food Stamp Review Officer in accordance with Section 13 of the Act, 7 U.S.C. § 2022 and 7 CFR 273.

The plaintiffs' cause of action arises under the provisions of 7 U.S.C. § 2022. Section 2022 provides, in relevant part:

"Whenever—

"(a) an application of a retail food store or wholesale food concern to participate in the food stamp program is denied,

"(b) a retail food store or wholesale food concern is disqualified under the provisions of section 220 of this title,

"(c) all or part of any claim of a retail food store or wholesale food concern is denied under the provisions of section 2021 of this title, notice of such administrative action shall be issued to the retail food store or wholesale food concern involved. * * * If such store or concern is aggrieved by such action it may, in accordance with regulations promulgated under this chapter, within ten days of the date of delivery of such notice, file a written request for an opportunity to submit information in support of its position to such person or persons as the regulations may designate. * * * If

such request is made by such store or concern, such information as may be submitted by the store or concern, as well as such other information as may be available, shall be reviewed by the person or persons designated, who shall, subject to the right of judicial review hereinafter provided, make a determination which shall be final and which shall take effect fifteen days after the date of the delivery or service of such.final notice of determination. If the store or concern feels aggrieved by such final determination he may obtain judicial review thereof by filing a complaint against the United States in the United States district court for the district in which he resides or is engaged in business, or in any court of record of the State having competent jurisdiction, within thirty days after the date of delivery or service of the final notice of determination upon him, requesting the court to set aside such determination."

In July of 1973, "C & C Market," owned by Moses Lee, Jr., with Joseph Murphy and Lorenzo Murphy, listed on the application as managers, applied for authorization to participate in the food stamp program. Said application was approved by the FNS on July 26, 1973, with authorization No. 8104298.

On or about November 21, 1975, an application was filed on behalf of "C & C Market, Inc." to continue participation in the Food Stamp Program. Said application was submitted by "Moses Lee, Jr., Owner, and Joseph Murphy, Manager." This application was approved under the same authorization number, namely No. 8104298, on December 2, 1975.

On July 6, 1978, Max Prewitt, Officer-in-Charge of the field office of FNS in St. Louis, wrote Moses Lee, requesting him to complete a new application on behalf of C & C Market, Inc., to be signed by him as a corporation officer.

On or about August 16, 1978, C & C Market, Inc., by its secretary, Joseph Murphy, submitted the application of C & C Market, Inc., to participate in the Food Stamp Program. Its corporate officers were listed as follows: Moses Lee, president; Lorenzo Murphy, vice-president; Joseph Murphy, secretary; and Samuel Petty, treasurer (See Ex.3 attached to Stipulation).

On September 7, 1978, Max Prewitt notified Joseph Murphy, secretary, that the Corporation's application for authorization to participate in the Food Stamp Program was being denied, and that C & C Market's previous authorization was being withdrawn. Max Prewitt's letter stated in part as follows:

"This is to notify you that the C & C Market, Inc. Application of August 16, 1978, for authorization to participate in the Food Stamp Program is denied for the following reasons:

"The regulations governing the Federal Food Stamp Program require us to consider, along with other factors, the business integrity and the reputation of the applicant. Since we have information that one of the corporation officers is on parole for armed robbery and murder, this officer is also one of the active managers of the store, this application is denied.

"Also, C & C Market's prior authorization, which was improperly applied for as a private owner instead of a corporation, is being withdrawn."

In the letter dated September 7, 1978, Joseph Murphy was further advised that in accordance with Food Stamp Program regulations he could request administrative review of this determination. Murphy was given the office and address of the FNS office in Washington, D. C., to which such a request should be made, and advised to submit any information he had which would have a bearing on the determination of denial. A copy of this letter is attached to the Stipulation and marked Exhibit 4.

A request for review was properly made, and the matter assigned to James A. Ramsey, a Food Stamp Review officer, FNS in Washington, D. C. On December 7, 1978, Ramsey wrote the C & C Market, c/o Joseph Murphy, advising as follows:

"Based on the arrest records of the principals of C & C Market, Inc., I can only concur with the Field Office that the firm's business integrity and reputation is such that it should not be permitted to participate in the Food Stamp Program.

"It is, therefore, my determination that the initial decision to deny the application of August 16, 1978, and to withdraw the authorization of December 2, 1975, be sustained."

Joseph Murphy was further advised by Ramsey of his right to judicial review of his determination. A copy of this letter is attached to the Stipulation and marked Exhibit 5.

On December 21, 1978, the St. Louis FNS field office advised Joseph Murphy by certified mail that pursuant to the determination of the Food Stamp Review Officer, the effective date of withdrawal of C & C Market's authorization would be January 2, 1979. A copy of this letter is attached to the Stipulation and marked Exhibit 6.

In 1969, Joseph Murphy was convicted in the City of St. Louis on his plea of guilty of two counts of manslaughter and sentenced to concurrent five-year terms in the Missouri State Penitentiary.

In 1968, Lorenzo Murphy was convicted of attempted armed robbery in the City of St. Louis, and sentenced to five years in the Missouri State Penitentiary.

In 1969, on his plea of guilty, Lorenzo Murphy was convicted of two counts of manslaughter, one count of robbery first degree, and one count of carrying a concealed weapon, receiving concurrent sentences of seven, five, seven and five years, respectively.

In 1965, Samuel Petty was convicted in St. Louis of armed robbery with intent to do great bodily harm, and received a sentence of seven years in the Department of Corrections.

In 1973, in the City of New York Samuel Petty was found guilty by a jury of robbery first degree and assault first degree, and received concurrent sentences of five-to-twenty and five-to-fifteen years.

On January 3, 1979, plaintiffs filed the instant suit seeking judicial review of the administrative determination made by the Department of Agriculture pursuant to 7 U.S.C. § 2022(c).

On January 5, 1979, a consent order to stay administrative proceedings was executed by counsel and granted by this Court.

The scope of review of department action by this Court is governed by Section 13 of the Act, 7 U.S.C. § 2022(c):

"The suit in the United States district court or state court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue. If the court determines that such administrative action is invalid it shall enter such judgment or order as it determines is in accordance with the law and the evidence."

Upon reviewing the record before this Court it is the finding of this Court that the action of FNS in denying the application of C & C Market, Inc., for authorization to participate in the Food Stamp Program and in withdrawing said Corporation's prior authorization, was in fact invalid.

In the application by C & C Market, Inc., for authorization to participate in the Food Stamp Program dated August 16, 1978, Moses Lee was named as president, Lorenzo Murphy was named as vice-president and listed as a "full or part-time manager", Joseph Murphy was named as secretary and listed as a "full or part-time manager", and Samuel Petty was named as treasurer and listed as a "full or part-time manager".

In the letter dated September 7, 1978, sent by Max Prewitt, Officer-in-Charge, denying the application of C & C Market, Inc. and withdrawing their prior authorization to participate in the Food Stamp Program, the following reason was given for such action:

"The regulations governing the Food Stamp Program require us to consider, along with other factors, the business integrity and the reputation of the applicant. Since we have information that one of the corporation officers is on pa-

role for armed robbery and murder, this officer is also one of the active managers of the store, this application is denied."

The uncontested evidence presented before this Court established that none of the named corporate officers of C & C Market, Inc., was ever convicted of murder. In view of this fact, the finding of Max Prewitt, the Officer-in-Charge, "that one of the corporation officers is on parole for armed robbery and murder", is clearly erroneous. For this reason, this Court finds that the action of FNS in denying the application of the plaintiff Corporation and in withdrawing the Corporation's prior authorization was invalid.

In response to the plaintiffs' contention that the erroneous factual determination invalidates the action of the administrative agency, defendant makes the following argument. Defendant contends that the sole issue for review here is the implicit determination by FNS that the applicant had a bad general reputation. Defendant asserts that the factual inaccuracies contained in the letter dated September 7, 1978, do not invalidate the ultimate decision by FNS that the applicant had a bad general reputation for the reason that FNS was not making a factual determination as to each plaintiff's criminal conviction record. Rather, FNS was merely making a determination that the applicant had a bad general reputation based upon the facts known to it and the inferences therefrom. Defendant asserts: "It was (and is upon this de novo review) the reputation of the applicants which was in issue, not their conviction record." In summary, defendant is advocating that while the underlying factual determination of FNS as to the conviction record of one of the plaintiffs may have been erroneous, the implicit determination by the administrative agency that the applicant had a bad general reputation was still valid, based upon the uncontested conviction records of three of the plaintiffs which were stipulated to and introduced into evidence before this Court.

The Court cannot agree with defendant's argument. In the case of *Rodale Press, Inc.*

*v. F. T. C.*, 132 U.S.App.D.C. 317, 407 F.2d 1252 (1968), plaintiffs sought to set aside an order of the Federal Trade Commission requiring plaintiffs to cease and desist from making certain representations in advertisements promoting the sale of some of their publications. In vacating the Commission's order, the Court noted that the theory under which the complaint was issued and under which the hearing before the examiner was held differed from the theory upon which the complaint was ultimately sustained by the F. T. C. At the hearing before the Examiner the complaint was prosecuted upon the theory that the advertising contained false promises of benefits. On appeal to the Federal Trade Commission the agency found against petitioners on the theory that the advertising misrepresented the content of the books. The Court stated:

"The Administrative Procedure Act, in 5 USC 554(b) (1964) provides in pertinent part: 'Persons entitled to notice of an agency hearing shall be timely informed of * * * (3) the matters of fact and law asserted.' Hence it is well settled that an agency may not change theories in midstream without giving respondents reasonable notice of the change." (Citations omitted.) *Id.* 132 U.S.App.D.C. at 321, 407 F.2d at 1256.

"By substituting an issue as to the book's content for the one framed by the pleadings, effectiveness of the book's ideas and suggestions, the Commission has deprived petitioners of both notice and hearing on the substituted issue. The evil at which the statute strikes is not remedied by observing that the outcome would perhaps or even likely have been the same. It is the opportunity to present argument under the new theory of violation, which must be applied." *Id.* 132 U.S.App.D.C. at 322, 407 F.2d 1257.

This Court recognizes that the specific statutes involved in *Rodale Press, Inc.*, supra, and the present case are not the same, and that the factual patterns of the two cases are quite dissimilar. Nevertheless, in this Court's view it is possible to draw an

analogy between the cases and thus to extend the reasoning of the Court in *Rodale,* supra, to the present case.

■ In essence, what defendant has done in the present case is to change facts in midstream instead of changing theories, as the Federal Trade Commission did in *Rodale,* supra. In the letter of September 7, 1978, Max Prewitt, the Officer-in-Charge, asserted as a basis for his decision the fact that "One of the corporation officers is on parole for armed robbery and murder." Now, at trial, defendant admits that the prior factual determination made by Prewitt was false, and proceeds to introduce into evidence the actual conviction records of each plaintiff or to bring in what is essentially new facts and evidence in support of FNS's prior action. While defendant's theory for denying the application of C & C Market, Inc. and withdrawing their prior authorization has remained the same throughout the administrative process and the present action, the underlying facts asserted by defendant as a basis for its action have changed substantially. In this Court's view fundamental fairness requires that it the food store owner is given notice of the underlying facts in the initial determination made by the "Officer-in-Charge", then the administrative agency cannot substitute new facts unless it first gives reasonable notice of such intention to the food store owner. "Having notified the parties of 'the matters of fact and law asserted', an agency cannot substitute new facts and theories unless it first gives parties reasonable notice." Mezines, Stein, Gruff, *Administrative Law,* Vol. 4, § 32.02[2], pp. 32–6 (1979).

For the above stated reasons, this Court finds that the determination of FNS in denying the application of C & C Market, Inc., and withdrawing said plaintiff corporation's prior authorization to participate in the Food Stamp Program should be set aside, and further finds that the prior authorization for C & C Market, Inc., to participate in the Food Stamp Program should be reinstated.

The Court adopts this opinion as its findings of fact and conclusions of law and the clerk of the Court is directed to prepare the proper judgment as set out above.