**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

REGENCY AIR, LLC,

*Petitioner*,

v.

STEPHEN M. DICKSON, Administrator of the FAA; FEDERAL AVIATION ADMINISTRATION,

*Respondents.*

No. 20-72084

FAA No. FAA-2017-0602

OPINION

On Petition for Review of an Order of the Federal Aviation Administration

Argued and Submitted May 14, 2021
Pasadena, California

Filed July 1, 2021

Before: Ryan D. Nelson and Kenneth K. Lee, Circuit Judges, and Sidney H. Stein,[*] District Judge.

Opinion by Judge R. Nelson

---

[*] The Honorable Sidney H. Stein, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Federal Aviation Administration

The panel denied a petition for review brought by Regency Air, LLC challenging a decision by the Federal Aviation Administration ("FAA") affirming an administrative law judge's finding that Regency Air violated regulations requiring air carriers to test each employee for drug and alcohol misuse if performing a safety-sensitive function like plane maintenance.

The ALJ imposed civil penalties, and the FAA Administrator increased the penalty pursuant to FAA sanction guidance.

The panel held that the FAA Administrator correctly held that the FAA's complaint did not violate due process and that 14 C.F.R. §§ 120.35, 120.39, and 49 C.F.R § 40.25 were not unconstitutional. Specifically, first, the panel held that although the FAA mistakenly but irrelevantly call Regency Air worker Ernest Douglas Long a contractor, it did not violate due process. Regency Air had adequate notice of the dispositive allegations against it: Regency Air should have enrolled Long in its testing program but failed to do so. Second, 14 C.F.R §§ 120.35 and 120.39 were not unconstitutionally vague as to whether Regency Air employee Gary Geis need to be enrolled in Regency Air's program when already enrolled in SoCal Jet Service's program. Third, 49 C.F.R. § 40.25 was not

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

unconstitutionally vague as whether Regency Air had to request Geis's past testing records as an employee. When an employer hires and becomes obligated to test an employee, it must request past testing records despite the employee's past work on the employer's planes in the scope of other employment.

The panel held that the FAA Administrator also acted within his discretion to modify the ALJ's initial penalty.

## COUNSEL

William J. Ingalsbe (argued), Monteleone & McCrory LLP, Los Angeles, California, for Petitioner.

Brett D. Weingold (argued), Office of the Chief Counsel, Federal Aviation Administration, Washington, D.C., for Respondents.

## OPINION

R. NELSON, Circuit Judge:

The Federal Aviation Administration ("FAA") requires air carriers to test each employee for drug and alcohol misuse if performing a safety-sensitive function like plane maintenance. 14 C.F.R. §§ 120.35, 120.39, 120.105(e), 120.215(a)(5). An ALJ found that Regency Air, LLC had violated these regulations and imposed civil penalties. The FAA Administrator affirmed, increasing the penalty consistent with FAA sanction guidance. We see no reason to reverse, and we deny the petition.

I

A

To ensure safe air travel, Congress directed the FAA to regulate drug and alcohol testing for air carrier employees. 49 U.S.C. § 45102(a)(1). Key to this appeal is who must be enrolled in an employer's testing program. Under these regulations, an air carrier employer "shall test each of its employees" for drug use if they perform safety-sensitive functions like plane maintenance. 14 C.F.R. §§ 120.35(a), 120.105(e), 120.215(a)(5). Likewise, an employer cannot "use any individual . . . to perform a safety-sensitive function . . . unless that individual is subject to testing for alcohol misuse." *Id.* § 120.39(b). If an employer violates these regulations, the FAA may impose civil penalties after notice and an opportunity to be heard. 49 U.S.C. § 46301(d)(2), (7)(A).

Both testing provisions turn on the definition of "employee,"[1] which is defined broadly. This includes any "individual who is hired, either directly or by contract, to perform a safety-sensitive function for an employer." 14 C.F.R. § 120.7(h). The definition of "hired" is equally broad: any individual "retain[ed] . . . for a safety-sensitive function as a paid employee, as a volunteer, or through barter or other form of compensation." *Id.* § 120.7(j). Thus, "employees" include direct employees, independent contractors, and volunteers. Ultimately, when an individual is doing maintenance work on an air carrier's plane, the

---

[1] Section 120.35 references "employees" and § 120.39 references "covered employee[s]." Because no regulatory difference exists between these terms, both testing requirement provisions refer broadly to the same type of employees. *Compare* 14 C.F.R. § 120.7(f) *with id.* § 120.7(h).

individual will almost always be an "employee" subject to drug and alcohol testing requirements.

One exception applies. An air carrier need not test someone who is working for another employer and enrolled in that employer's testing program. *Id.* § 120.7(i); *see also id.* §§ 120.35(b), 120.39(b). This exception draws a clear line: unless an individual meets § 120.7(i)'s two requirements, an air carrier must enroll every employee in its testing program who does maintenance work on its planes.

One other regulation is relevant. An employer must request an employee's past testing records from a previous FAA-regulated employer when the employee begins doing safety-sensitive work for the new employer. 49 C.F.R. § 40.25(a). Preferably, the employer obtains these records before the employee begins safety-sensitive work. *Id.* § 40.25(d). But employers have a 30-day grace period during which an employee can start working before the employer obtains these records. *Id.* After 30 days, however, the employee must stop safety-sensitive work unless the employer has obtained, or made a good-faith effort to obtain, the employee's testing records. *Id.*

B

Regency is a private charter company subject to FAA drug and alcohol testing regulations. Through its employment of Ernest Douglas Long and Gary Geis, Regency violated the testing and past record provisions described above.

Starting in 2015, Long performed safety-sensitive work on Regency planes as a volunteer for over a year. During this period, Long also worked for Paragon Airways and was

enrolled in Paragon's testing program. But Long's work for Regency was unrelated to his Paragon employment—he was an independent volunteer, working as a friend of Regency's president. Regency did not enroll Long in its testing program.

Also in 2015, Regency contracted with SoCal Jet Services to acquire a director of maintenance. For three months, Geis filled this role and worked on Regency's planes. He was enrolled in SoCal's testing program rather than Regency's, but this did not violate FAA regulations as Geis was working on behalf of SoCal. *See* 14 C.F.R. § 120.7(i).

That dynamic changed on January 4, 2016, when Regency hired Geis as a direct employee. Though Geis still worked for SoCal on other matters, he no longer worked for SoCal on Regency planes after January 4. Still, Regency did not immediately enroll Geis in its testing program. Geis began safety-sensitive work on January 25 and was enrolled in Regency's testing program on February 2, under which Geis was not subject to testing until mid-April.

Regency also allowed Geis to continue safety-sensitive work long after the 30-day grace period had ended. Because Geis began work on January 25, Regency had until late February to obtain or make a good faith effort to obtain Geis's past testing records. *See* 49 C.F.R. § 40.25(d). It failed to do so. In fact, Regency allowed Geis to do safety-sensitive work for over a year before properly requesting the records in February 2017.[2]

---

[2] Regency requested drug testing documentation from SoCal in October 2015 but failed to first obtain Geis's consent and ultimately the

In April 2017, the FAA informed Regency that it had violated the regulations discussed above.  In its complaint, the FAA alleged that Regency failed to enroll Long and Geis in its testing program, *see* 14 C.F.R. §§ 120.35, 120.39, and allowed Geis to do safety-sensitive work as a direct employee without obtaining his past testing records, *see* 49 C.F.R. § 40.25.  The FAA also proposed a $17,400 civil penalty.

After a hearing, the ALJ concluded that Regency had violated FAA regulations but mitigated the penalties to $11,900 since Geis and Long were enrolled in other employers' testing programs and Geis had passed his pre-employment drug test.  On administrative cross-appeal, the FAA Administrator affirmed that Regency had violated the drug and alcohol testing regulations.  But the Administrator increased civil penalties to $15,600 since the ALJ's mitigating factors were not cognizable under FAA sanction guidance.  Regency then petitioned this court to vacate the Administrator's order.

## II

We review the Administrator's sanction determination under the Administrative Procedure Act's ("APA") deferential arbitrary or capricious standard.  5 U.S.C. § 706(2)(A).  When, as here, Congress has authorized the agency to determine and impose sanctions, the agency's sanction determinations are "peculiarly a matter for administrative competence."  *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185 (1973) (citation omitted).

---

records.  *See* 49 C.F.R. § 40.25(a).  The ALJ held that this was not a good-faith effort to obtain records, and Regency does not challenge that determination here.

Thus, a reviewing court cannot overturn the determination unless "unwarranted in law or without justification in fact." *Id.* at 185–86 (alteration adopted) (citation omitted); *Balice v. U.S. Dep't of Agric.*, 203 F.3d 684, 689 (9th Cir. 2000) (same). The FAA's findings of fact are also conclusive if supported by substantial evidence. 49 U.S.C. § 46110(c).

We review de novo whether an agency's regulations are unconstitutionally vague. *Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 569 (9th Cir. 2018) (citation omitted). Similarly, we review de novo whether an agency's complaint violates due process. *Id.* at 569–70 (citation omitted).

## III

### A

Regency argues it did not have fair notice of the claims against it. The FAA's complaint called Long a "contractor," and the ALJ found him to be an "employee" as defined by FAA regulations. But this difference was regulatorily irrelevant and thus did not violate due process.

The APA requires an agency to timely inform persons participating in a hearing of "the matters of fact and law asserted." 5 U.S.C. § 554(b)(3). FAA regulation similarly requires the agency to "set forth the facts alleged, any regulation allegedly violated by the respondent, and the proposed civil penalty in sufficient detail." 14 C.F.R. § 13.208(c). An agency's complaint is construed liberally. *Donovan v. Royal Logging Co.*, 645 F.2d 822, 826 (9th Cir. 1981). But an agency violates due process if it "change[s] theories in midstream without giving respondents reasonable notice of the change." *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1324 (Fed. Cir. 2017) (citation omitted);

*Rodale Press, Inc. v. Fed. Trade Comm'n*, 407 F.2d 1252, 1256 (D.C. Cir. 1968).  Should an agency change theories, the opposing party must have "the opportunity to present argument under the new theory of violation," even if the outcome would be the same.  *Rodale Press*, 407 F.2d at 1257.

Here, the FAA did not change theories midstream.  Its core allegations are simple: Long performed safety-sensitive work, Regency did not enroll Long in its testing program, and that failure violated 14 C.F.R. §§ 120.35 and 120.39.  The ALJ found exactly that.

True, Long was a volunteer, not a contractor.  But contractor or not, Regency was still required to enroll Long in its testing program.  After all, air carriers must test "employees" for drug and alcohol use, *id.* §§ 120.35, 120.39, meaning any individual "hired, either directly or by contract," including volunteers, *id.* § 120.7(h), (j).  Thus, regardless of Long's employment status, the FAA's legal theory remained the same: Regency had to enroll Long in its testing program but failed to do so.

At oral argument, Regency took a different tack, arguing that FAA regulations do not require contractors to be tested.  Still, it still misreads the regulations.  It argued that FAA regulations do not require contractors to be tested, making Long's contractor status dispositive.  Though the exception in 14 C.F.R. § 120.7(i) obviates the need to test contract employees, the FAA's complaint did not allege facts suggesting this narrow exception applied to Long.  Nor does the record support § 120.7(i)'s application.  Regency repeatedly argued that Long was an independent volunteer, not a contract employee working on behalf of Paragon.  Given that the exception in § 120.7(i) was not alleged (nor did it apply), the FAA's legal theory relied on the general

rule for testing: Regency had to test Long regardless of his contractor status. At any rate, if Regency had truly relied on this narrow exception below, it is unclear why it argued that Long was *not* a contractor.

The record also shows that the parties did not understand Long's status to be dispositive. The ALJ characterized the central issue as whether "Long [was] required to be in [Regency]'s drug and alcohol testing pool when he performed safety-sensitive functions" for Regency. Regency's counsel agreed that this statement captured the main issue, though Long's status went without mention. Regency's own opening statement also clarified that "the evidence is going to show that Mr. Long was not contracted for or an employee of Regency Air when he did that work." The FAA also noted that Long's contractor status would not matter. In actuality, the main issue seemed to be whether, as the ALJ explained to Regency, "someone [could] perform work without being paid and not tested"—i.e., whether a volunteer performing safety-sensitive functions triggered an air carrier's testing obligations. And as the ALJ held, Long's status as a volunteer triggered Regency's testing obligations. Again, no change in theories.

At the very least, a change in theory sufficient to violate due process must turn on a dispositive allegation or claim. Where, as here, the FAA mistakenly but irrelevantly called Long a contractor, it did not violate due process. Instead, Regency had adequate notice of the dispositive allegations against it: Regency should have enrolled Long in its testing program but failed to do so.

B

Regency argues that 14 C.F.R §§ 120.35 and 120.39 are unconstitutionally vague as to whether Geis needed to be

enrolled in Regency's program when already enrolled in SoCal's program.  We disagree.

For a regulation to survive a vagueness challenge, it "must give a person of ordinary intelligence adequate notice of the conduct it proscribes."  *See Cal. Pac. Bank*, 885 F.3d at 571 (internal quotation mark and citation omitted).  We afford "greater tolerance" to statutes and regulations "with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."  *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982).

The application of § 120.35 and § 120.39 to Geis's employment is clear.[3]  For drug testing, § 120.35 requires an employer to "test each of its employees who perform a function listed in subpart E of this part in accordance with that subpart."  14 C.F.R. § 120.35(a).  Subpart E reaffirms this, requiring all employees doing safety-sensitive work to "be subject to drug testing" and repeatedly placing the onus on employers to perform that testing.  *Id.* §§ 120.105, 120.107, 120.109.  Aside from the contract employee exception in § 120.7(i), an employer must test an employee.  And the parties do not dispute that Geis was, in fact, an employee.  Thus, Geis's concurrent employment, while not addressed in the regulations, unambiguously falls within the regulations' plain text.

---

[3] When a regulation is challenged for vagueness, "the reviewing court must assess it within the context of the particular conduct to which it is being applied."  *Cal. Pac. Bank*, 885 F.3d at 571 (citation omitted).  Thus, we analyze Regency's unconstitutional vagueness challenges to 14 C.F.R. §§ 120.35, 120.39, and 49 C.F.R. § 40.25 as applied to Geis's employment.

Section 120.39 is worded slightly different but yields the same conclusion. An employer cannot allow an individual to perform a safety-sensitive function "unless that individual is subject to testing for alcohol misuse in accordance with the provisions of [subpart F]." *Id.* § 120.39(b). At first glance, Geis seems to satisfy § 120.39—after all, he was enrolled in SoCal's testing program and thus "subject to testing for alcohol misuse." *Id.* The key, however, is subpart F. Like subpart E, subpart F requires an *employer* to "select and test" its employees. *Id.* § 120.217(c)(6); *see also id.* §§ 120.203(b), 120.215(c)(7)–(8). Again, there is no exception for concurrent employment.

Sections 120.35 and 120.39 do not mention what to do when an employee is concurrently employed. But this silence does not doom the provisions as unconstitutionally vague. Instead, the FAA chose to promulgate a general rule: if an employee works on an air carrier's planes, the air carrier must enroll the employee in its testing program. The FAA also identified only one narrow exception to this rule, inapplicable here. Thus, Regency had to test Geis despite his concurrent enrollment in SoCal's program.

C

Regency also argues that 49 C.F.R. § 40.25 is unconstitutionally vague as to whether Regency had to request Geis's past testing records as an employee. We again disagree.

Section 40.25 forbids an employer from letting an employee do safety-sensitive work for more than 30 days unless the employer obtains or makes a good-faith effort to obtain the employee's records. 49 C.F.R. § 40.25(d). This provision "applies only to employees seeking to begin performing safety-sensitive duties for you for the first time."

*Id.* § 40.25(a). The parties agree that Geis had worked on Regency's planes for three months before becoming a Regency employee. So his work after January 4, 2016, was not his "first time" working on Regency's planes. That said, the parties dispute when Geis began working "for" Regency.

The circumstances of Geis's employment show he did not work "for" Regency until becoming a direct employee. During the three-month period before Regency hired Geis, he worked for SoCal. Regency contracted with SoCal for director of maintenance services, SoCal provided those services through Geis, Regency paid SoCal for the services, and SoCal paid Geis. Geis did not need to be in Regency's program before being directly hired precisely because he was working "on behalf of" SoCal. *See* 14 C.F.R. § 120.7(i). Put differently, Geis worked for SoCal on Regency's planes before January 4, but Geis did not begin safety-sensitive work for Regency until after January 4. Thus, after January 4, Regency needed to request and obtain Geis's past testing records. *See* 49 C.F.R. § 40.25.

Relatedly, Regency contends that § 40.25's reference to "employee" is unconstitutionally vague. Not so. For this chapter of the C.F.R., an "employee" is defined as "[a]ny person who is designated in a DOT agency regulation as subject to drug testing and/or alcohol testing." 49 C.F.R. § 40.3. In other words, we are back to the FAA's definition of employee: someone "who is hired, either directly or by contract" to perform safety-sensitive work. 14 C.F.R. § 120.7(h). Unquestionably, Geis was an "employee" of Regency after January 4. And he was not a Regency "employee" before that point. There was no employment relationship between Regency and Geis before January 4; the only contract before then was between Regency and SoCal with no mention of Geis. Instead, Geis became an

"employee" for § 40.25 purposes only after Regency directly hired him.

In sum, § 40.25 is not unconstitutionally vague. When an employer hires and becomes obligated to test an employee, it must request past testing records despite the employee's past work on the employer's planes in the scope of other employment.

## D

Finally, Regency contends the Administrator erred by modifying the ALJ's penalty determination. We disagree once again.

The FAA has broad discretion "both to select sanctions and to impose sanctions upon" air carriers. *Roundtree v. United States*, 40 F.3d 1036, 1039 (9th Cir. 1994) (citation omitted); *see also* 49 U.S.C. § 46301(d)(7)(A). The Administrator may also "affirm, modify, or reverse the initial decision." 14 C.F.R. § 13.233(j); *see also* 49 U.S.C. § 46301(d)(7)(B). If the ALJ's determination "does not comply with Agency sanction policy," the Administrator has "both the authority and duty to impose the agency's policy on appeal" and "may reverse." *In re: Robert M. Riter*, FAA Order No. 2019-1, 2019 WL 3255008, at *3 (May 15, 2019).

The Administrator acted within its discretion, and we see no reason to reverse. The ALJ initially mitigated Regency's penalties because Geis and Long were enrolled in other employers' testing programs, Regency had subjected Geis to pre-employment testing, and Geis was not part of the testing pool for only a brief period. But as the Administrator pointed out, these factors do not follow agency sanctions guidance and policy. *See generally* FAA Compliance & Enforcement Program, FAA Order No. 2150.3B (Oct. 1,

2007) (as amended), *superseded by* FAA Order No. 2150.3C (Sep. 18, 2018) (as amended).  And Regency does not identify any legal or factual basis for why this conclusion was wrong.  Instead, the Administrator acted well within his discretion in modifying the ALJ's initial determination.  *See* 14 C.F.R. § 13.233(j); *Riter*, 2019 WL 3255008, at \*3.

Regency argues the FAA contradicted its own policies in seeking sanctions in the first place or should have mitigated them since Regency's violations were not intentional or reckless.  But Regency does not cite or clarify what policies it is referring to (other than citing the Administrator's decision, which in turn cites Regency's administrative brief).  The FAA, however, provided its FAA Compliance and Enforcement Program, which "articulates the FAA's philosophy for using various remedies" and includes sanction guidance policies.  FAA Order No. 2150.3B; *see also id.* at 7-1 to 7-19.

Under these policies, "[t]he FAA may assess civil penalties after affording the alleged violator notice and an opportunity for a hearing on the record before an administrative law judge."  *Id.* at 6-18.  The FAA retains discretion to decide when to seek sanctions.  Moreover, recklessness and deliberateness are aggravating factors, not prerequisites to seeking sanctions as Regency suggests.  *See id.* at 7-5 to 7-6; *see also id.* at 7-5 ("A good compliance attitude is the norm and does not warrant a reduction in sanction.").  Thus, the FAA acted within its discretion and established policy in seeking and imposing sanctions against Regency.

## IV

The FAA Administrator correctly held that the FAA's complaint did not violate due process and that 14 C.F.R.

§§ 120.35, 120.39, and 49 C.F.R. § 40.25 are not unconstitutionally vague. The Administrator also acted within his discretion to modify the ALJ's initial penalty.

**PETITION DENIED.**