Alton SIMON, Appellant,

v.

ALASKA WOOD PRODUCTS, Alaska Pacific Assurance Company and Alaska Workmen's Compensation Board, Appellees.

No. 5131.

Supreme Court of Alaska.

Sept. 11, 1981.

Drew Peterson, Alaska Legal Services Corp., Ketchikan, for appellant.

T. G. Batchelor, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellees.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

PER CURIAM.

Alton Simon of Wrangell allegedly injured his back at work on October 30, 1976. On December 14 he filed a claim for workers' compensation, in which he stated that the injury occurred while he was hauling power lines for his employer, Alaska Wood Products, Inc. The employer questioned the veracity of Simon's claim, but its carrier, the Alaska Pacific Assurance Company ("ALPAC"), nevertheless paid Simon temporary total disability benefits and medical expenses for sixteen weeks during a period of over one year.[1] The total amount expended by ALPAC exceeded $12,000.00.

Several disputes arose between Simon and ALPAC, resulting in Simon's January 1978 filing of an "application for disability benefits" with the Alaska Workers' Compensation Board ("Board").[2] In this application Simon complained about ALPAC's computation of his Alaska Wood Products wage base, and sought, among other things, a declaration of permanent partial disability. ALPAC did not file an answer to the application. A hearing was held in Ketchikan on March 6, 1978.

At the hearing Simon began by testifying about the circumstances of his alleged injury. After he rested, ALPAC presented three witnesses who disputed Simon's account of his injury, and suggested that actually he had not been injured, but had quit to take another job. At the beginning of this testimony the following exchange took place between Simon's attorney, A. Fred Miller, and ALPAC's attorney, T. G. Batchelor:

MR. MILLER: Excuse me! I think I probably ought to impose an objection here. I'm not aware that at issue is whether or not this injury was compensable or not. I didn't know that that issue was before the Board, and yet it seems like this testimony reaches that. If so, I'm objecting to it on the fact that it is irrelevant, and that the issue has not been raised that this is not a compensable injury. Otherwise, I would like to know the purpose of the questions.

MR. BATCHELOR: I'm not sure I understand the objection. We have here a claim that Mr. Miller has submitted and we are permitted to defend it on any grounds.

MR. COOK [Board chairman]: Well, yes. Are you saying—Is that your position that there was no injury?

MR. BATCHELOR: There are a couple of problems with the claim. One of the problems is what really happened that day. And in terms of what happened, Mr. Simon has testified at length.

---

1. Simon worked at other jobs following his alleged injury, and received disability benefits only for those periods when pain or medically connected travel prevented him from working.

2. The Board was formerly known as the Alaska Workmen's Compensation Board. Its title was changed by § 60, ch. 94, SLA 1980.

Now, testimony tending to show that the way he described the incident as occurring as being untrue is admissible for impeachment purposes. That's one reason. Although the claim has not been contested on the grounds of whether or not he actually suffered a work-related injury there are some questions that arise concerning his testimony related to how it occurred. And that is admissible for that purpose. What Mr. Uttke is going to tell you is how people really were working and what was really happening that day, and there are some discrepancies between the way Mr. Simon described the work progressing that day and what happened to him. And although we haven't defended on those grounds because of the presumption enjoyed by an employee we can impeach his testimony. It is admissible for impeachment purposes.

MR. MILLER: Maybe he can just state the discrepancies and stipulate that the witness has testified that way and be on with it if his purpose is solely for impeachment purposes.

MR. BATCHELOR: If Mr. Miller is willing to stipulate that his client lied on the stand, I'm willing to—

MR. COOK: He will say it was one of those points where he misstated the facts according to Uttke. Just get to those. Go ahead! It probably would be [easier to] run through it than to argue on each point.

In its April 14, 1978, decision the Board found Simon had not suffered a work-related injury. Simon appealed the Board's decision to the superior court on two grounds: that the Board had decided an issue not properly before it, and that the Board's decision was not supported by substantial evidence. The superior court, in September 1979, affirmed the Board's decision. Simon then appealed to this court, this time only on the first ground.

Simon's essential contention on appeal is that the Board's action in deciding whether his disability was work-related violates his due process right to fundamental fairness in an administrative proceeding. He claims that ALPAC did not indicate it contested the injury's work-relatedness. ALPAC denies any procedural unfairness.

■ We address first the preliminary question of review. Simon does not challenge the Board's factual determination but rather its authority to render the decision it made in this case. This appeal presents a question of law, not of fact, and we will give "fresh consideration" to the Board's decision. *M–K Rivers v. Schleifman*, 599 P.2d 132, 134 (Alaska 1979).

■ Simon provides, and we have found, very little underpinning in case law for his "fundamental fairness" argument. In *Wood v. Oklahoma Osteopathic Hospital*, 512 P.2d 135 (Okl. 1973), the Oklahoma Supreme Court held that the State Industrial Court (Oklahoma's equivalent of the Board) could not dismiss a claim for lack of timely notice when the employer did not raise this issue in its answer.[3] Similarly, in *Rodale Press, Inc. v. F.T.C.*, 407 F.2d 1252 (D.C.Cir. 1968), the court held that the publishers of allegedly false advertising were deprived of notice and a fair hearing when the theory upon which the Commission ultimately sustained the complaint differed from the theory upon which the complaint was issued and the hearing before the examiner was held. *Id.* at 1255–57. We find these authorities applicable to the instant case to the extent that they support the proposition that issues not raised in some way by the parties may not be decided by the Board.

Under 8 AAC 45.050(c)(2)(A), the employer's answer to the employee's petition for action by the Board should state "briefly, yet clearly, the matters that are admitted and those that are in dispute so that an average layman may know what he will be

---

**3.** *Wood* rests on Oklahoma procedural rules which, unlike our rules, require an employer to file an answer to the employee's claim. *Wood v. Oklahoma Osteopathic Hospital*, 512 P.2d 135, 136 (Okl. 1973). Under 8 AAC 45.050(c)(1) the Board "recommends and urges" the employer to file an answer, but no default will be entered for a failure to do so.

required to prove at the hearing." We hold that even when an employer or carrier fails to file an answer, that this rule is nevertheless applicable. When a respondent does not file an answer, the Board may decide only those matters that the respondent has clearly raised by his hearing presentation.

■ We turn now to the major issue in this case: whether ALPAC clearly raised the work-relatedness issue before the Board. Simon does not argue that ALPAC could not have raised the issue, or that the evidence on which the Board relied was insufficient to support the ruling. Nor does he take issue with ALPAC's assertion that it has never conceded the legitimacy of his claim. Instead he contends that ALPAC did not state its intention to contest the work-relatedness of Simon's injury with sufficient clarity to put Simon on notice that he had to defend his claim.

We agree with Simon. Although brief excerpts of the record, taken in isolation, might support a contrary conclusion, we find the record when read as a whole establishes that the issue was not clearly raised. We are especially persuaded by the exchange between counsel quoted earlier in this opinion and particularly by the final remark of ALPAC's attorney. We also find significant the remark of ALPAC's attorney, in response to the Board chairman's inquiry as to why further testimony on Simon's injury was necessary:

> I am now with these witnesses and the questions about what happened. I have been trying to impeach Mr. Simon's testimony because I think their testimony uniformly will show that Mr. Simon wasn't doing what he said he was doing. It is not offered for the issue of whether or not he suffered a work-related injury because that heavy burden that's on the employer I don't think we can carry, but it is offered for the purpose of impeaching Mr. Simon's testimony.

The superior court ruled that the work-relatedness issue was before the Board because Alaska Wood Products had questioned the authenticity of Simon's injury in its initial notice of injury submitted to the Board. We cannot agree, for we conclude that ALPAC, by paying Simon benefits for over a year, effectively negated any possible notice of dispute that the initial questioning of his claim might have given. We also find no significance in the fact that Simon was the first to state his injury was work-related, both in his notice to his employer and in his testimony before the Board. Simon's claim of work-relatedness in his application for benefits was, as he describes it, "basically a *pro forma* assertion of the basis of his claim." We regard his testimony in the same light, since the Board was hearing his case for the first time and had no knowledge of the underlying facts.

In reaching the conclusion that the work-relatedness issue was not clearly raised, we have construed the evidence favorably toward Simon. We have done this because we feel the important question here is not whether the issue actually was raised, but rather whether Simon's attorney could reasonably have believed ALPAC was raising it. We conclude that he could not have so believed.[4] By failing to clearly raise the work-relatedness issue, ALPAC has waived it.

This view also leads us to reject as controlling Simon's failure to request a continuance. The superior court noted this failure, and ALPAC argues "the proper remedy for any of the parties who felt surprised by the manner in which the evidence developed was to request a continuance." Simon apparently believed, again reasonably in our opinion, that rebuttal of this evidence was not vital to the very existence of his

4. The record tends to show that neither attorney believed the issue was raised. In his closing argument, Simon's attorney stated:

> The injury was not contested. I don't think that issue can be raised. I think the matter of the credibility is, as I said before, up to you folks.

ALPAC's attorney gave a lengthy closing argument in which he cited the impeaching testimony to support his client's allegation that Simon had not suffered a decrease in earning capacity. He did not ask the Board to find Simon's injury was not work-related.

right to obtain benefits. The issue of work-relatedness had not been clearly raised. He may have decided to concede defeat as to the benefits which were the subject of this hearing, believing that such a concession would not jeopardize his entitlement to past benefits.[5] Simon also may have been aware of the disfavor with which the Board regards requests for continuances. *See* 8 AAC 45.070(c).

ALPAC raises two alternate arguments in support of the Board's authority to hear the work-relatedness question that do not depend on a finding that the question was raised below. It contends the Board could decide the work-relatedness question because it is a jurisdictional issue. As ALPAC notes, AS 23.30 grants the Board authority to award compensation only when the claimant's injury is work-related. AS 23.30.265(13). But this fact is not determinative of the jurisdiction question. The Board has jurisdiction to review any claim that *alleges* a work-related injury. If the Board determines the injury is not work-related, it dismisses the claim. Such a dismissal does not imply that the Board was without jurisdiction to hear the claim, just as a court's dismissal of an action for failure to state a cognizable claim does not imply lack of jurisdiction over the action.

ALPAC also argues that the Board was authorized to determine this issue under AS 23.30.110(a):

> Subject to the provisions of § 105 of this chapter [establishing notice requirements for the filing of claims], a claim for compensation may be filed with the board in accordance with its regulations at any time after the first seven days of disability following an injury, or at any time after death, and the board may hear and determine all questions in respect to the claim.

We find that the language "all questions" is limited to the questions raised by the parties or by the agency upon notice duly given to the parties. Here the agency failed to give notice to Simon that it was raising the issue of work-relatedness. Simon asks only that he be given the opportunity to present evidence on that issue.

The judgment of the superior court is REVERSED, and the case is REMANDED with instructions to remand to the Board so that Simon may present evidence supporting his claim that his injury was work-related.

---

5. Simon's attorney did not explicitly make such a concession, but his closing argument is notably lacking in force.