Henry SUMMERS, Appellant,

v.

KOROBKIN CONSTRUCTION and
Providence Washington Insurance
Company, Appellees.

No. S–3570.

Supreme Court of Alaska.

July 19, 1991.

Chancy Croft, Anchorage, for appellant.

Robert L. Griffin, Mason & Griffin, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

*Introduction*

Henry Summers was injured in 1984, when he worked for Korobkin Construction. At the time of Summers' hearing before the Alaska Workers' Compensation Board ("Board"), Korobkin had paid all of Summers' medical expenses. However, Korobkin refused to acknowledge that Summers had a valid and compensable claim, and reserved the right to assert affirmative defenses against future claims by Summers. At the hearing, Summers sought a determination of his injury's compensability. The Board declined to make any determination of compensability, stating that no outstanding claim existed. The superior court affirmed. We reverse.

*Facts and Proceedings*

The facts relevant to this appeal are undisputed.[1] Henry Summers reported an in-

---

1. As the facts are undisputed and only a question of law exists, this court must "adopt the rule of law that is most persuasive in light of precedent, reason and policy." *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987) (quoting *Brooks v. Brooks,* 733 P.2d 1044, 1055 (Alaska 1987) (quoting *Guin v. Ha,* 591 P.2d 1281, 1984 n. 6 (Alaska 1979))). On questions of law, the standard of review is *de novo. Id.*

jury to his neck while working as a carpenter for Korobkin Construction on January 28, 1984. Summers told his employer of the injury orally on January 29, 1984, and he filed a report of occupational injury on January 12, 1985. Korobkin controverted the claim on February 12, 1985.

Summers saw Dr. Horning who diagnosed him as having a pinched nerve in his neck and ordered physical therapy. The doctor terminated Summers' physical therapy in February 1985, although Summers still noted numbness in his hands and pain in his arm. Summers saw other doctors subsequently, including Dr. Lehman in May 1986, who informed him he had a ruptured disc and recommended that Summers have surgery. At his deposition, Summers testified that his willingness to consider this procedure rested on whether workers' compensation would pay for it. In November 1986, Dr. Lehman still thought surgery was necessary.

Summers did not miss any work as a result of his injury. However, he did incur approximately $2,000 in medical bills. Without ever acknowledging liability, Korobkin's insurance carrier paid most of the bills. However, these payments were made under a reservation of rights. For this reason, and because a few medical bills remained unpaid, Summers requested a hearing before the Board.

The hearing before the Board occurred on March 18, 1988. Just prior to the hearing, Korobkin paid the last of Summers' medical bills. Korobkin also agreed at this time to pay Summers' reasonable attorney's fees. Korobkin also withdrew its reservation of rights as to the medical expenses it had paid, thereby waiving any right to seek reimbursement for them in the future. However, it refused to acknowledge the compensability of Summers' injury or to waive any of its defenses to Summers' claim.[2] Thus, whether Korobkin would compensate Summers for future

claims remains in doubt. There has never been a formal settlement between the parties.

Korobkin requested that the Board decline to hear the case because all items in dispute had been paid. The last time Summers incurred a medical expense was one and one-half years prior to the Board hearing.[3] Summers requested that the Board determine the compensability of the claim or rule that Korobkin had waived its right to contest compensability.

The Board declined to hear the matter. As it explained in its written decision,

We found, based on the employee's representations, that he has had no medical treatment attributable to the 1984 injury in a year and a half. We found, therefore, both an absence of a current dispute and an absence of a current course of medical treatment which might prompt a dispute in the immediate future. We concluded, therefore, that the hearing should be closed without taking evidence on the compensability of the alleged 1984 injury. AS 23.30.110(c) grants us discretionary authority to make investigations and order hearings on claims. We exercised our discretion to decline to hold a hearing, at this time, on the compensability of the alleged 1984 injury.

(Footnotes omitted.) The Board further noted that,

We determined at hearing that the parties intended to rely on depositions (including that of the employee) and medical records already prepared. We decided the preservation of evidence minimized possible prejudice to the parties' ability to present the claim, if necessary, at some future time.

On appeal, the superior court found that the single issue was "whether the Workers' Compensation Board could properly refuse to decide this case under [AS 23.30.110]."

---

2. Essentially, the various affirmative defenses Korobkin asserts are failure to give notice under AS 23.30.100; failure to file a timely claim under AS 23.30.105; the injury did not arise out of the employment; failure to mitigate; and laches.

3. Apparently, Summers incurred no medical expenses for treatment of the injury between the time of hearing and the decision of the superior court.

The superior court analogized to the need for a case or controversy to pursue a court action, and concluded,

> The Board acted reasonably. If the record showed a probability that future claims would arise, the Board may have abused its discretion, but the passage of one and one-half years with no medical treatment suggests that the question need not be answered. There is also the likelihood that the employer having paid medical and other claims to date would pay future medical bills. In the event that the question needed to be answered in the future, the delay probably would not result in prejudice to the claimant.
>
> The court interprets a claim to mean where money due has not been paid. While the parties could not agree on the issue of causation and the payment of the claim was not an admission, there was no claim before the Board at the time set for hearing.

*Discussion*

The Alaska Workers' Compensation Act, AS 23.30.005–.270, ("AWCA") creates a comprehensive system of compensation for injured workers. When disputes arise between workers and employers as to the coverage of AWCA, AWCA provides for adjudication of the dispute by the Board. AS 23.30.100–.145.

■ AWCA also provides that the right to compensation is contingent upon filing a claim. AS 23.30.105. The procedure on claims is established by AS 23.30.110. AS 23.30.110(a) states that "the board may hear and determine all questions in respect to the claim." AS 23.30.110(c) requires

that the party seeking a hearing file a request for a hearing. If the opposing party does not oppose the hearing request, a hearing "*shall* be scheduled no later than 60 days after the receipt of the hearing request." *Id.* (emphasis added). If the hearing request is opposed, the Board "*shall* within 30 days of the filing of the opposition conduct a pre-hearing conference and set a hearing date." *Id.* (emphasis added). Accordingly, under AS 23.30.-110(c), the holding of a hearing on a claim, after a request for a hearing, is mandatory, not discretionary. *Sherrod v. Municipality of Anchorage*, 803 P.2d 874, 876 (Alaska 1990). Thus, the Board erred when it found that "AS 23.30.110(c) grants us discretionary authority to make investigations and order hearings on claims." [4]

As mentioned above, the superior court upheld the Board's decision to deny Summers a hearing, however, on the ground that there was no claim. The superior court stated that it "interprets a claim to mean where money due has not been paid."

■ AWCA does not define "claim." It is significant, however, that the right to compensation is contingent upon filing a claim. AS 23.30.105. "The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of the employee's disability and its relation to the employment and after disablement." AS 23.30.105(a). Under this section of the act, the only requirement for a claim is knowledge of a disability and its work-relatedness. There is no requirement that the injured worker have incurred unpaid medical expenses.[5]

---

4. Our interpretation of our statute as requiring a hearing on a claim is in accord with cases from other jurisdictions. *See, e.g., Atlantic & Gulf Stevedores, Inc. v. Donovan*, 279 F.2d 75 (5th Cir.1960) (interpreting Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 919(c)); *City of Humphrey v. Woodward*, 628 S.W.2d 574 (Ark.App.1982); *Bethany Medical Center v. Knox*, 10 Kan.App.2d 192, 694 P.2d 1331 (1985); *Lauer v. Tri–Mont Cooperative Creamery*, 287 Minn. 221, 178 N.W.2d 248 (1970); *Steele v. North Dakota Workmen's Compensation Bureau*, 273 N.W.2d 692 (N.D.1978); *Herring v. Welltech, Inc.*, 660 P.2d 361 (Wyo. 1983).

5. Professor Larson states that the purpose of the claims provision in most workers' compensation statutes is to prevent the prosecution of stale claims. *See* 2 A. Larson, *Workmen's Compensation* § 78.20, at 15–5 (Desk Ed.1990). In a slightly different context, Larson speaks of a worker who may have incurred a disability, but not a loss in income. For example, because income usually exceeds compensation, an injured worker may continue to work for a time. *Id.* § 78.50, at 15–29. Yet, that injured worker must still file a *claim. Id.* Similarly, just because Korobkin paid Summers' medical ex-

As Summers filed a claim under the statute, we disagree with the superior court's determination that the Board correctly denied Summers a hearing on the basis that he had no claim pending before the Board at the time set for hearing. The text of AS 23.30.110(c) reflects that the legislature intended to award injured workers the right to a hearing on their claims. Pursuant to the provisions of AS 23.30.105, the only prerequisite for filing a claim is a work-related injury.[6]

The California Supreme Court has also decided that lack of current treatment does not prevent an employee from receiving a determination of his or her claim. *Zeeb v. Workmen's Compensation Appeals Bd.*, 67 Cal.2d 496, 62 Cal.Rptr. 753, 432 P.2d 361 (1967) (en banc). In *Zeeb*, the employer's physician refused to provide medical treatment, except on a private basis, on the ground that the injury was not work-related. Therefore, the worker procured his own doctor. After the employee obtained a determination of compensability, the employer paid the employee's accrued expenses. However, the employee then sought a determination of whether he could retain his own doctor, as the employer tried to reassert control over his treatment. The referee refused to hear the case because the employee was not currently receiving any treatment. The California Supreme Court held that lack of current treatment was not a sufficient reason to avoid a determination. *Id.* 62 Cal.Rptr. at 755, 432 P.2d at 363. The dispute between the parties created a "controversy" which, under the law, entitled the worker to a determination.[7]

Moreover, we believe that an injured worker who has been receiving medical treatment should have the right to a prospective determination of compensability. *See Kauffman v. Workmen's Compensation Appeals Bd.*, 273 Cal.App.2d 829, 78 Cal.Rptr. 620, 627 (1969) (employee entitled to award specifying type of future care to avoid burden of instigating future litigation and "risk of being denied reimbursement and adequate care"); *see also McAree v. Gerber Prods. Co.*, 342 A.2d 608, 611 (R.I.1975) (employee may request board to determine prior authorization of treatment, even if not a type of treatment enumerated in the statute as requiring prior authorization). Injured workers must weigh many variables before deciding whether to pursue a certain course of medical treatment or related procedures. A salient factor in many cases will be whether the indicated treatment is compensable under AWCA.

Here, Korobkin disputed many aspects of Summers' application for adjustment of claim. Korobkin's answer advanced numerous defenses to Summer's claim, including that Summers' injury was not work-related and that it was barred by the statute of limitations. Summers is entitled to a hearing on Korobkin's defenses. If Summers prevails, Korobkin will still be able to controvert Summers' claim at a future hearing, if the grounds for controversion arise after the initial hearing. AS 23.30.-130. However, a worker in Summers' position, who has been receiving treatment for an injury which he or she claims occurred in the course of employment, is entitled to

---

penses does not mean that no "claim" exists under the statute.

**6.** AS 23.30.110(a) states that "[A] claim for compensation may be filed with the board in accordance with its regulations at any time after the first seven days of disability following an injury, or at any time after death, and the board may hear and determine all questions in respect to the claim." We have previously held that "the language 'all questions' is limited to the questions raised by the parties or by the agency upon notice duly given to the parties." *Simon v. Alaska Wood Products*, 633 P.2d 252, 256 (Alaska 1981). Thus, the Board has discretion to raise questions *sua sponte* with sufficient

notice; however, the mandatory nature of AS 23.30.110(c) makes it clear that the Board may not decline to hear disputes concerning a validly filed claim.

**7.** Alaska law mandates a hearing to determine a "claim," whereas California law required that "controversies 'between employer and employee arising under this chapter shall be determined by the ... appeals board, upon the request of either party.'" *Zeeb*, 62 Cal.Rptr. at 755, 432 P.2d at 363 (quoting California Labor Code, § 4604). However, we decline to distinguish *Zeeb* on this basis.

a hearing and prospective determination on whether his or her injury is compensable.[8]

The decision of the superior court is REVERSED, and the case is REMANDED to the superior court with instructions to remand to the Board for further proceedings consistent with this opinion.

---

8. The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 914(h) (1988), states,

> The deputy commissioner (1) may upon his own initiative at any time in a case in which payments are being made without an award, and (2) shall in any case where right to compensation is controverted, ... upon receipt of notice from any person entitled to compensation, or from the employer, that the right to compensation is controverted, ... make such investigations, cause such medical examinations to be made, or hold such hearings, and take such further action as he considers will properly protect the rights of all parties.

As one court has explained, "[o]nly when liability is controverted does the claim go to an administrative law judge of the Department of Labor, who, as to all questions in respect to a controverted claim, has the power and responsibility of decision...." *Presley v. Tinsley Maintenance Serv.*, 529 F.2d 433, 436 (5th Cir.1976) (no evidence supported administrative law judge's finding that a claimant would suffer from total temporary disability for surgery not yet performed).