LESLIE CUTTING, INC., Long Island Development, Reid Timber, Inc., and Alaska Timber Insurance Exchange, Appellants,

v.

Charles H. BATEMAN, Appellee.

No. S–4390.

Supreme Court of Alaska.

June 5, 1992.

Mala J. Reges, James R. Webb, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellants.

T.G. Batchelor, Batchelor, Murphy & Brinkman, Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Leslie Cutting, Inc., Long Island Development, Reid Timber, Inc., (Employers) and Alaska Timber Insurance Exchange (ATIE) appeal the superior court's reversal of the Alaska Workers' Compensation Board's (Board) denial of benefits to Charles Bateman. The Board determined that Bateman's claim was barred by the statute of limitations. The superior court reversed the Board on alternative grounds. We affirm the judgment of the superior court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Charles H. Bateman was working as a logger when he contracted an allergy to frullania, a lichen common in forests. The allergy, also known as "hemlock poisoning," resulted in outbreaks of eczematous dermatitis. The symptoms included open, weeping sores on exposed areas of the body, hands, head and face. Bateman's symptoms first appeared in 1983. Bateman filed a Report of Occupational Injury or Illness at that time. Bateman received

medical advice from a number of doctors [1] and lost little work time in 1983 because of his condition.

In 1984 Bateman's condition recurred in a worsened state and he filed a new Report of Injury. Bateman was examined by Dr. David Johnson who referred Bateman to Dr. Charles J. Hammer in Seattle. Dr. Hammer diagnosed eczematous dermatitis caused by the frullania allergy. Dr. Hammer prescribed a topical hydrocortisone cream as treatment, but stated that the rash could only be prevented by work in an environment free from frullania.

Bateman received temporary total disability compensation from February 9, 1984 through June 9, 1984. ATIE [2] referred Bateman to vocational rehabilitation services. Terry McCarron, a vocational rehabilitation counselor with Collins & Associates, Inc., found that Bateman had no transferable skills outside of logging and working with wood products, except for his military leadership experience. McCarron anticipated placement in a federal or state agency and recommended an on-the-job training program.

Bateman agreed to pursue employment alternatives.[3] He initially found work as a crew boss in a tree thinning operation. With assistance from the State of Alaska, Department of Education, Division of Vocational Rehabilitation (DVR), Bateman obtained tree thinning contracts from the U.S. Forest Service and hired loggers to perform the cutting. McCarron approved of this type of work on a trial basis, but wrote Bateman and warned him to remove himself from the forest if the problems recurred.[4] McCarron closed Bateman's file on the basis that Bateman was now his own employer and had decided to formulate his own rehabilitation program. Bateman's compensation pay was terminated because he had returned to work.

Bateman was unable to keep a steady work force to maintain his contract work and took a job as a winter caretaker of a logging camp. When the camp reopened, Bateman again took a job as a logger, which involved steady exposure in the woods. In 1986 Bateman's dermatitis recurred in full and he filed his third Report of Injury. Bateman eventually saw Dr. John Bocachica,[5] who prescribed a regimen of oral and topical medications which could control but not eliminate the dermatitis. Bateman lost little work time because of this outbreak and no disability compensation was paid.

Bateman, able to control the dermatitis with the medication, increased his work time in the woods. The medications, however, became less effective over time, causing Bateman to increase his dosage.

In March 1989 Bateman suffered another serious outbreak and saw Dr. Albert Maling of Craig, to obtain a new prescription for the medications. Dr. Maling informed Bateman that the medications he had been taking, including steroidal creams and pills, were extremely dangerous when taken over extended periods and in the high doses Bateman needed for the drugs to be effective. Bateman filed his fourth Report of Injury on May 1, 1989. Attached to the report was the recommendation of Dr. Mal-

---

1. On June 22, 1983, Dr. W.H. Anthes diagnosed contact dermatitis. On September 9, 1983, Dr. Michael Cusack diagnosed infected eczema. On October 3, 1983, Dr. Arthur N. Wilson, Jr. diagnosed eczematoid dermatitis.

2. At the time, Bateman was employed by Long Island Development, Reid Timber, Inc. and Silver Bay Logging. Later, Bateman was employed by Island Logging, Inc., Reid Timber, Inc. and Leslie Cutting, Inc. All the employers, except Island Logging, were insured by ATIE. However, Island Logging and its insurer, Providence Washington Insurance Company, were not joined in this suit. Therefore we refer to all the appellants collectively as ATIE.

3. McCarron's report indicates that Bateman expressed some interest in marine engine repair and that Bateman would see if he could set up an on-the-job training program.

4. Bateman claims that he did report a recurrence to ATIE when he was forced to expose himself to frullania more frequently than he had originally planned. However, Bateman was told by ATIE that he could not get in touch with McCarron or receive additional benefits because Bateman was working again.

5. Before filing the Report for Injury, Bateman was examined by Dr. Kim Smith.

ing that Bateman "be placed on disability and that vocational rehabilitation be instituted." Bateman had not worked since he suffered a recurrence of the dermatitis on April 18.

Bateman requested and was granted a rehabilitation evaluation. Bateman was again examined by Dr. Hammer. Dr. Hammer found that Bateman had "a zero percent impairment ... and should have no difficulty as long as he avoids contact with Frullania." ATIE paid temporary total disability payments to Bateman for the period of April 20, 1989 through September 13, 1989, but controverted additional compensation based on Dr. Hammer's finding of no permanent disability. Bateman was also denied reemployment benefits by the Rehabilitation Benefits Administrator because he had no permanent physical impairment.

On September 29, 1989, Bateman filed an Application for Adjustment of Claim, seeking vocational rehabilitation and other benefits. ATIE denied the claim asserting, among other defenses, that the statute of limitations had run on Bateman's claim. ATIE claimed that since Bateman's injury and disability occurred in 1984, the two

year period provided in the Alaska Workers' Compensation Act, AS 23.30.105,[6] had expired. The Board ruled that Bateman's injury was not a latent defect and that his claim was otherwise barred by the statute of limitations.[7]

Bateman appealed the Board's decision to the superior court. AS 22.10.020(d); Alaska Appellate Rule 602(a)(2). The superior court reversed the Board, concluding that as a matter of law, Bateman either did not have a disability in 1984 or did not know the extent and nature of the disability and its relation to his employment. ATIE appeals.

## II. DISCUSSION

### A. STANDARD OF REVIEW

 This court will independently review the merits of an administrative determination. No deference is given to the superior court's decision when that court acts as an intermediate court of appeal. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987). This court will substitute its judgment for that of the Board in reviewing

6. Sec. 23.30.105. Time for filing of claims.
 (a) The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of the employee's disability and its relation to the employment and after disablement. However, the maximum time for filing the claim in any event other than arising out of an occupational disease shall be four years from the date of injury, and the right to compensation for death is barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of the injury or death, a claim may be filed within two years after the date of the last payment of benefits under AS 23.30.180, 23.30.185, 23.30.190, 23.-30.200, or 23.30.215. It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined by the board, time limitations notwithstanding.
 There was some dispute whether Bateman came under the act's 1984 or 1989 provisions. The section quoted above contains the 1988 amendments. However, these changes do not affect Bateman's case.

7. The Board stated two independent grounds for barring Bateman's claim. First, the Board found that Bateman was "fully aware of the nature of his condition, its relation to working in the woods, and that he was disabled by it" more than two years before he filed the claim in September 1989. His claim was thus barred by the first sentence of AS 23.30.105(a). Second, the board found that the present claim was barred by the second sentence of AS 23.30.-105(a) which provides that "if payment of compensation has been made without an award on account of injury or death, a claim may be filed within two years after the date of the last payment."
 Since Bateman had collected temporary total disability compensation in 1984, the provision applied. The superior court below and the parties in their briefs before this court discuss only the first ground and the absence of a latent defect. Presumably, the second ground was recognized as plainly incorrect because it does not apply to "occupational diseases." AS 23.30.-105(a). *See* 1B Arthur Larson, *The Law of Workmen's Compensation* § 41.62(a), at 7–589 (1991) (noting that an allergy is an occupational disease if it was brought on by conditions of employment).

questions of law and statutory interpretation. *Phillips v. Houston Contracting, Inc.*, 732 P.2d 544, 546 (Alaska 1987).[8]

## B. TWO YEAR LIMITATIONS PERIOD

The statute of limitations in the Alaska Workers' Compensation Act allows disabled workers two years from when they have "knowledge of the nature of [their] disability and its relation to [their] employment" to file a claim. AS 23.30.105(a). Bateman was fully aware in 1984 that his injury was debilitating when present and could only be *prevented* by avoiding contact with the woods. However, Bateman did not learn that his allergy was not controllable until March 1989. This appeal thus turns on one issue: does a disabled worker know the "nature" of the disability and the relationship of the disability to the worker's employment when the worker reasonably but erroneously believes the injury is controllable by medication?

■■■ We conclude that the answer is no. The Alaska Workers' Compensation Act defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." AS 23.30.265(10). The inquiry into disability focuses on the loss of earning capacity and not on the actual medical impairment. *Cortay v. Silver Bay Logging*, 787 P.2d 103, 105 (Alaska 1990). Thus it follows logically that one does not know the nature of one's disability and the relationship of the disability to one's employment until one knows of the disability's full effect on one's earning capacity. The mere awareness of the disability's full physical effects is not sufficient.

■■■ ATIE contends that Bateman was disabled in 1984 because he collected temporary total disability and his condition had matured at that time. We are not persuaded, however, that Bateman had knowledge of the *nature* of his disability *and* its relationship to his employment before 1989. It was not until Bateman learned that he could not treat the allergy with medicine that he was fully aware of its economic impact. Until then he reasonably believed that he could control the condition so that his earning capacity was not affected. He accomplished this by a combination of medication and limited exposure to the woods. In fact, Bateman followed this routine, found his own employment and was able to work until the medication became ineffective.

Bateman's belief that he could control his condition was reasonable. The recommendations Bateman received from the doctors and his counselors were far from clear. Bateman's doctors told him that working in the woods would aggravate his problem. They did not tell him that such exposure was untreatable.[9] McCarron was similarly ambiguous in his recommendations. It was not until Dr. Maling told Bateman that Bateman's course of action was life-threatening[10] that Bateman's belief became unreasonable.

## III. CONCLUSION

Bateman did not have knowledge of the nature of his disability until he discovered that it was no longer safely treatable with medication. It was at that point that he was first fully aware of the nature of his disability and the allergy's bearing on his employment. Until then, he reasonably believed he could still earn his customary wages by treating the dermatitis out-

---

8. Both parties seem to frame the Board's decision as a determination of law. However, the key determination is when Bateman had knowledge of the nature of his disability and the relationship of his disability to his employment. This determination is a finding of fact. We will uphold the Board's findings of fact if they are supported by substantial evidence. *Childs v. Kalgin Island Lodge*, 779 P.2d 310, 313 (Alaska 1989).

9. Dr. Bocachica, for example, was willing to prescribe medication to treat Bateman's condition.

10. According to Bateman, Dr. Maling told him, "Why don't you just carry a gun in the woods with you and shoot yourself?" in reference to Bateman's high dosages of medications. Even Dr. Maling, however, only concluded that Bateman "*may* be unable to continue [his] occupation."

breaks. Thus the two year statute of limitations period did not begin to run until September 1989.

The judgment of the superior court reversing the Board is AFFIRMED.