Dennis EGEMO, Appellant,

v.

EGEMO CONSTRUCTION COMPANY,
CNA Insurance Company, and North-
ern Adjusters, Appellees.

No. S–8960.

Supreme Court of Alaska.

April 14, 2000.

Rehearing Denied May 2, 2000.

Chancy Croft, Debra Fitzgerald, Chancy Croft Law Office, Anchorage, for Appellant.

Timothy A. McKeever, William W. Whitaker, Holmes, Weddle & Barcott, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Chief Justice.

## I. INTRODUCTION

Dennis Egemo was involved in a work-related accident in 1967 that deformed his left leg. In 1995 a doctor recommended that he have surgery to correct the deformity. Egemo had surgery in 1998. The Workers' Compensation Board ordered medical benefits for the surgery but not time-loss benefits. Egemo was required to file his claim within two years of his knowledge of the disability, his knowledge of the disability's relationship to his employment, and after disablement. The Board concluded that Egemo had not timely filed under this standard. The superior court affirmed.

We reverse the superior court's decision and remand for a determination of time-loss benefits, because Egemo filed within two years of his disablement.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 1967 Dennis Egemo, an employee of Egemo Construction Company, was injured in a work-related accident. He experienced multiple injuries, including compression fractures in his back, fracture of the right fibula, and fracture of the left tibia and fibula.

Dr. George von Wichman put Egemo's left leg in a cast, but the tibia healed out of alignment, resulting in a varus deformity.[1] When the cast was removed, the varus deformity was within an acceptable alignment.

Egemo experienced snapping and pain in his left leg, for which he had surgery in 1968.

Dr. von Wichman warned Egemo that he would probably have severe or acute arthritis in the areas of the injuries. Egemo received time-loss and medical benefits from the workers' compensation carrier pursuant to a settlement agreement.

Between 1968 and 1996 Egemo had back, knee, and leg problems, but did not file for medical or time-loss benefits, although he knew that the carrier would have paid them.

On December 1, 1987, Egemo consulted Dr. J.S. Pucelik regarding his knee problems. Dr. Pucelik diagnosed arthritis of both knees, chondromalacia,[2] chondrocalcinosis,[3] a possible tear in the right knee, and a malunion of the tibial fracture causing arthritis. Dr. Pucelik recommended an arthroscopy[4] of both knees and noted "[I] will not do an osteotomy [5] of the tibia right now. [Egemo] can't miss the time off of work and I don't know whether I want to do it anyway."

Egemo consulted two other doctors about his knees in 1987 and 1988. Both doctors diagnosed degenerative arthritis and chondrocalcinosis of both knees. In February 1988 Egemo had arthroscopic surgery on his knees. The post-operative diagnosis was degenerative disease and a tear on the right knee. Following this surgery, Egemo took time off to recuperate, and then returned to work.

Beginning in 1989 Egemo experienced a series of back problems requiring multiple surgeries. He continued to experience back pain, as well as pain in his ankle and foot. The ankle and foot pain had been present since the accident in 1967 but slowly worsened over the years.

On August 4, 1995, Egemo consulted Dr. David Lang about the pain in his left foot and ankle. Dr. Lang noted that the pain was caused by the varus deformity from the 1967 accident and recommended an osteotomy.

---

1. A varus deformity occurs when part of a limb is twisted inward. *See Stedman's Medical Dictionary* 1689 (25th ed.1990).

2. *Chondromalacia* is the softening of cartilage, commonly in the knee. *See id.* at 298.

3. Chondrocalcinosis is a calcification of cartilage, causing various forms of arthritis. *See id.* at 297.

4. Arthroscopy is the introduction of a thin fiber-optic scope to allow examination of the interior of a joint. *See id.* at 136.

5. An osteotomy is a surgical procedure that involves cutting through bone. *See id.* at 1110.

He suggested that Egemo get a second opinion. Dr. Bryan Den Hartog concurred with Dr. Lang in all relevant respects.

Egemo saw Dr. Edward James about his back pain in late September of 1995. Dr. James agreed that Egemo needed an osteotomy, but recommended that his back be fixed first.

In April 1997 Egemo saw Dr. Stephen Ekrich, who noted that the ankle pain was caused by the malunion of his tibia. He recommended realignment using the Ilizarov technique rather than an osteotomy.[6]

In September 1997 Dr. Douglas Smith examined Egemo at the request of the Workers' Compensation hearing officer. Dr. Smith concluded that Egemo's left leg condition was caused by the 1967 accident and that the malunion of his left tibia was contributing to pain in the left knee and ankle. When asked whether Egemo should have had the osteotomy in 1988, Dr. Smith indicated that it "would have been reasonable to consider straightening the angulation" but that "[w]hether it was necessary or not would depend upon really the opinion of Mr. Egemo and his surgeon." Dr. Smith felt that the left knee problems were somewhat exacerbated by the accident but that it had no effect on his right knee.

Egemo was also evaluated by independent medical examiner Dr. Michel Gevaert in September of 1997. Dr. Gevaert found that Egemo's knee and ankle pain were caused by the malunion of the tibia and recommended surgery using the Ilizarov technique. He concluded that the 1967 accident was not a significant cause of Egemo's knee problems.

Egemo had surgery on his left leg, using the Ilizarov technique, on February 10, 1998.

### B. *Proceedings*

On October 14, 1996, Egemo filed an Application for Adjustment of Claim. Egemo sought payment of medical bills, temporary total disability beginning on June 26, 1996, attorney's fees, and interest from Egemo

Construction Company, CNA Insurance Company, and Northern Adjusters (collectively "CNA"). CNA advised Egemo and the Board at the pre-hearing conference that it considered the leg surgery to be compensable.

On October 16, 1997, the Workers' Compensation Board held a hearing in this case. At this hearing, Egemo argued that CNA's voluntary agreement to pay for medical benefits entitled Egemo to time-loss benefits. At that point, CNA had not paid Egemo's medical benefits for his varus deformity surgery.

Egemo filed a second Application for Adjustment of Claim on November 24, 1997, seeking medical expenses for the surgery, attorney's fees, and time-loss benefits. CNA did not pay Egemo's bills while awaiting the Board's decision.

The Board issued its opinion in December 1997. The Board awarded Egemo medical benefits for treatment relating to the varus deformity but denied him temporary disability compensation for the time period he would be disabled as a result of the surgery. CNA began paying Egemo's medical bills on January 19, 1998.

Egemo appealed the Board's decision to deny time-loss benefits for the varus deformity surgery. The superior court affirmed the Board's decision. This appeal followed.

### III. *STANDARD OF REVIEW*

 *Aleck v. Delvo Plastics, Inc.* sets out the appropriate standard of review in this case:

Because the superior court acted as an intermediate court of appeals in this case, we do not defer to its decision. Instead, we independently review the merits of an administrative determination. We will substitute our judgment for that of the Board in reviewing questions of law and statutory interpretation. In particular, we

---

**6.** The Ilizarov technique involves attaching wires to the bone and then attaching them to a frame; walking with this frame encourages natural bone growth, allowing the limb to be straightened and lengthened. *See* Marshall Hall, *A Better Way to Correct Bone Deformities,* Miami Health Letter at 1–3 (1998).

review de novo a ruling on the appropriate statute of limitations.[7]

However, the determination as to when Egemo learned of his disability is a question of fact, which we generally review under the substantial evidence standard.[8] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9]

■■■■ The burden of proof is on CNA to establish the affirmative defense of failure to file a timely claim.[10] The failure to comply with a statute of limitations is a disfavored defense.[11] We resolve ambiguities about the meaning of the Workers' Compensation Act in the employee's favor.[12]

## IV. DISCUSSION

CNA successfully argued before the Board that Egemo's claim was barred by the statute of limitations provision in AS 23.30.105(a), which provided in 1967[13] that:

The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of his disability and its relation to his employment and after disablement. However, [the maximum time for filing the claim in any event other than arising out of an occupational disease shall be four years from the date of injury, and][14] the right to compensation for death is barred unless

a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of the injury or death, a claim may be filed within two years after the date of the last payment. It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined by the board, time limitations notwithstanding.[15]

Based on this provision, the Board concluded that Egemo's claim was untimely, as more than two years had passed since he knew of the disability and its relation to employment.

Egemo argues that the Board erred as a matter of law in this determination because he lacked disablement until the 1998 surgery.[16] CNA offers three responses. First, Egemo was disabled by his varus deformity prior to the surgery, beginning when he was told that he needed the surgery. Second, the Board found that Egemo was disabled in 1988 from the knee surgery. Third, Egemo filed his claim *before* disablement, since he filed in 1996, even though the statute requires that he file *after* disablement. These arguments are addressed in turn.

### A. The Varus Deformity

■■■ Egemo argues that for an employee to have a ripe disability claim, there must be

---

7. *Aleck v. Delvo Plastics, Inc.*, 972 P.2d 988, 990 (Alaska 1999) (footnotes and internal quotations omitted).

8. *See id.*

9. *Alaska State Hous. Auth. v. Sullivan*, 518 P.2d 759, 760–61 (Alaska 1974) (internal quotations omitted).

10. *See Anchorage Roofing Co. v. Gonzales*, 507 P.2d 501, 504 (Alaska 1973).

11. *See Safeco Ins. Co. of Am. v. Honeywell, Inc.*, 639 P.2d 996, 1001 (Alaska 1981).

12. *See Seward Marine Servs., Inc. v. Anderson*, 643 P.2d 493, 497 (Alaska 1982); *Hood v. State, Workmen's Compensation Bd.*, 574 P.2d 811, 813 (Alaska 1978). This rule of construction does not apply to injuries sustained after July 1, 1988, because when the legislature amended the Work-ers' Compensation Act effective on that date, the legislature expressed its intent that the act not be construed in favor of either party. *See* Ch. 79

§§ 1, 52 SLA 1988; *Forest v. Safeway Stores, Inc.*, 830 P.2d 778, 781 n. 7 (Alaska 1992). This amendment does not apply retroactively.

13. Because the accident occurred in 1967, we apply the version of the statute that was in effect at that time.

14. In *W.R. Grasle Co. v. Alaska Workmen's Compensation Board*, 517 P.2d 999 (Alaska 1974), we held that the language in brackets was repealed by the legislature in 1962. We therefore do not consider it.

15. Former AS 23.30.105(a).

16. Egemo also argues that he lacked knowledge, however this factual argument was waived below and at oral argument. He raises an additional claim that he fell within the "payment of compensation without an award" exception. Because Egemo filed within two years of his disablement, thereby tolling the statute of limitations, we do not resolve this issue.

both a medical condition and an earning impairment. He argues that he did not experience the combination of the two until the 1998 surgery. CNA argues that Egemo had knowledge of the injury in 1987 such that he should have then filed a claim for his varus deformity. CNA objects to the idea of waiting until a claim has "ripened" before filing for disability. We agree with Egemo's theory of ripeness.

■ The language of the statute sets the critical guideposts. A "claim" is a written pleading that is filed, and is distinct from the employee's right to compensation.[17] Disability is "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."[18] Disability compensation is premised on the loss of earning capacity related to a medical impairment.[19] Therefore, a claim for disability is a written pleading requesting monetary compensation for the *inability to earn wages* because of a work-related injury or illness.[20]

Egemo filed his written pleading on October 14, 1996. At that point, he knew that he would need surgery to correct his varus deformity. He had not yet taken any time off from work for this surgery, as it took place in 1998. Thus, although he was aware of his impending disability in 1987, when a doctor first told him that he would someday need surgery, he was not actually disabled until he experienced the wage loss in 1998.[21]

■ CNA argues that Egemo's theory of ripeness should be rejected because it revives a claim every time a worker loses work time due to medical treatment. That characterization is not entirely correct. A claim is ripe only when it involves a work-related injury or illness that causes wage loss.[22] Only if the new medical treatment causes the wage loss is there a new claim, restarting the statute of limitations. In the same way that medical claims are revived whenever there is new treatment,[23] disability claims related to the new treatment are revived.

Egemo argues that subsection .105(a) allows for more than one disablement from a given injury or event. The statute suggests that this interpretation is correct. Other jurisdictions have similarly recognized that a single accident may give rise to multiple periods of disability.[24] As the Fifth Circuit noted, "[t]here may, of course, be two or more injuries received in the same accident. While the disability due to one injury may be immediately appreciated, the existence and consequences of another injury may be unknown for months or years thereafter."[25]

---

17. *See Jonathan v. Doyon Drilling, Inc.*, 890 P.2d 1121, 1123 (Alaska 1995).

18. Former AS 23.30.265(10).

19. *See Vetter v. Alaska Workmen's Compensation Bd.*, 524 P.2d 264, 266 (Alaska 1974) ("An award for compensation must be supported by a finding that the claimant suffered a ... decrease in earning capacity due to a work-connected injury or illness."); 4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 57.11 at 10–16 (1999) (disability is a blend of physical disability and the inability to earn wages).

20. CNA argues that *Summers v. Korobkin Constr.*, 814 P.2d 1369 (Alaska 1991), shows that a worker does not need to miss work in order to have a compensable claim. However, in *Summers*, the employer paid the medical bills but contested the compensability of the claim. *See id.* at 1370. We ordered the Board to decide whether the claim was compensable; we did not decide that Summers had experienced disablement. *See id.* at 1372.

21. *See Wolfe v. Neal*, 156 So.2d 513, 514–15 (Fla.1963) (notice to employer runs from the date of disability—time off of work—rather than knowledge of disease); *Brock v. International Harvester Co.*, 374 S.W.2d 507, 508 (Ky.1963) (statute of limitations does not run until employee is disabled, i.e., terminated from employment).

22. *See Vetter*, 524 P.2d at 266 ("The concept of disability compensation rests on the premise that the primary consideration is not medical impairment as such, but rather loss of earning capacity related to that impairment.").

23. *See* AS 23.30.095.

24. *See, e.g., Jewel Food Cos. v. Industrial Comm'n*, 256 Ill.App.3d 525, 196 Ill.Dec. 700, 630 N.E.2d 865, 871 (1993) (where employee sustains injury to one part of the body, employee may still recover benefits for injuries to other parts of the body that subsequently develop).

25. *Marathon Oil Co. v. Lunsford*, 733 F.2d 1139, 1142 (5th Cir.1984).

That being the case, each period of disability is characterized by a conjunction of a work-related injury or illness and wage-loss. If these two factors are present, the clock begins anew.

Egemo's position is consistent with our case law. In *Leslie Cutting, Inc. v. Bateman*, the claimant, a logger, was diagnosed with an allergy to lichen.[26] He initially believed that he could control the allergy with medication and did not request disability benefits.[27] He later learned that he could not continue the high doses of medication and would have to leave the logging industry.[28] Bateman filed for compensation within two years of being told that he could not work in the industry, but not within two years of learning of his allergy.[29] Concluding that Bateman filed within the statute of limitations, we noted that "one does not know the nature of one's disability and the relationship of the disability to one's employment until one knows of the disability's full effect on one's earning capacity. The mere awareness of the disability's full physical effects is not sufficient."[30] By the time Bateman understood that he would not be able to return to his logging job, he had already taken time off.[31] Thus, Bateman was disabled before he knew the extent of his disability. Egemo has the reverse situation; he knew of his loss of earnings before it happened. In either case, however, both the knowledge and the disablement must be conjoined before the employee is required to file a claim.

■ CNA argues that no state has adopted a rule restarting the statute of limitations each time the worker needs new medical treatment that causes him to miss work. However, in Alaska, new medical treatment entitles a worker to restart the statute of limitations for medical benefits.[32] Egemo's argument is the logical extension of that practice to disability benefits.

Because Egemo suffered no loss of earnings from his varus deformity until the 1998 surgery, it did not disable Egemo more than two years prior to the filing of his claim.

### B. *The Knee Problems*

The Board found that Egemo was disabled in 1988 from the knee surgery. Because of this incident, the Board concluded that Egemo filed his claim more than two years after disablement. Our conclusion that a new medical treatment resulting in a new period of wage loss constitutes a new disability moots this argument.

### C. *Filing Before, Instead of After, Disablement*

■ CNA argues that Egemo filed before, rather than after the surgery, in contradiction to the "after disablement" provision. This is correct, but does not justify dismissal of Egemo's claim.

■ The statute directs that the claim be filed "within two years after the employee has knowledge ... and after disablement."[33] The clear intent is that two years after disablement is the *latest* an employee would be allowed to file. The purpose of the two-year requirement is to "protect the employer against claims too *old* to be successfully investigated and defended."[34] This purpose is not served by dismissing prematurely filed claims. CNA was not prejudiced or inconvenienced by knowing before the surgery that Egemo would have a claim.

On the other hand, if a worker files a claim early and the time for filing elapses while the worker awaits resolution of the claim, the worker might then be precluded from filing a timely claim. This would serve no useful purpose.

26. 833 P.2d 691, 691–92 (Alaska 1992).

27. *See id.* at 692.

28. *See id.*

29. *See id.* at 693.

30. *Id.* at 694.

31. *See id.* at 692.

32. AS 23.30.095.

33. Former AS 23.30.105(a).

34. *Morrison–Knudsen Co. v. Vereen*, 414 P.2d 536, 538 (Alaska 1966) (internal quotation omitted and emphasis added).

In our view, when a claim for benefits is premature, it should be held in abeyance until it is timely, or it should be dismissed with notice that it may be refiled when it becomes timely.[35] In the present case, it would have been appropriate for the Board either to hold Egemo's claim in abeyance until the surgery took place or to notify him that his claim was premature so that he would know to refile it after the surgery.

## V. CONCLUSION

In order for the statute of limitations under former AS 23.30.105(a) to begin running, the claimant must know of the disability and its relationship to employment and must actually be disabled by that disability. Because Egemo was not disabled by his varus deformity until he had surgery on it in 1998, his claim was timely. We therefore REVERSE and REMAND for a determination of the time-loss benefits owed to Egemo.

**35.** *Cf., Evron v. Gilo,* 777 P.2d 182, 185 (Alaska 1989) (premature appeal automatically treated as timely upon entry of final judgment); Alaska R.App. P. 204(a)(6); *see also* 2 Am.Jur.2d *Administrative Law* § 572 (1994) (even though a petition may be filed prematurely, a party can still obtain judicial review); 5 Am.Jur.2d *Appellate Review* § 300 (1995)(a notice of appeal filed before entry of judgment is treated as if it were filed on or after entry of judgment).